[Sac. No. 3291. In Bank.—September 14, 1923.]

## LOUIANA C. TAYLOR, Appellant, v. HARRY L. TAYLOR, Respondent.

[1] HUSBAND AND WIFE — DIVORCE — COMMUNITY PROPERTY — RIGHTS IN.—If no disposition of the community property is made in a divorce action, and a party is not estopped, the respective rights of the parties may be enforced in an independent action, and this rule applies where the action is brought in one state and the property is situated in another.

---

1. Effect of divorce on community property in absence of adjudication, note, 11 L. R. A. (N. S.) 103.

[2] Jurisdiction—Territorial Limits—Title to Property in Other State.—The courts of one state cannot make a decree which will operate to change or directly affect the title to real property beyond the territorial limits of their jurisdiction.

[3] Id.—Power of Court of Equity—Judgment in Personam.—By means of its power over the person of the parties before it, a court of equity may in proper cases compel them to act in relation to property not within the jurisdiction, but its decrees do not operate directly upon property out of its jurisdiction nor affect the title thereto. They are only made effectual through the coercion of the parties by directing some action on their part, such as the execution of conveyances or the cancellation of instruments.

[4] Id.—Divorce—Property out of State—Ineffectual Judgment. While the court in the state in which the party bringing a suit for divorce is domiciled has jurisdiction to grant a divorce, upon service by publication against the other party, who is a nonresident, it has no power to settle the title to lands out of the state, and a general order, finding, or decree made by it, purporting to bar the rights of the defendant in the real property of the parties, or either of them, is ineffectual so far as the property in the other state is concerned.

[5] Id.—Lack of Jurisdiction—Judgments—Due Faith and Credit. If jurisdiction does not exist, the enforcement of a judgment rendered in one state is not compelled by the due faith and credit clause of the constitution.

[6] Id.—Divorce—Appearance in Action—Effect on Property Out of State.—The appearance of the defendant in an action for divorce brought in another state and allegations and admissions in the pleadings as to there being no community property adds nothing to the effect of the decree of the court on property in this state, as neither a party, nor both parties, can vest a court with a jurisdiction to which it is a stranger.

[7] Id.—Community Property—Judgment of Foreign State.—In an action for divorce in a foreign state, where the complaint alleged and the answer admitted that there was no community property and by reason of this allegation and admission the decree was silent as to property, the allegation and admission should be construed that there was no community property within the state where the suit was brought only, because that was the extent

2. Extraterritorial effect of divorce decree, note, 83 **Am. St. Rep.** 816.

3. Jurisdiction in equity over suits affecting real property in another state or country, notes, 23 **L. R. A. (N. S.)** 924; 27 **L. R. A. (N. S.)** 420.

to which such issue could be submitted to the jurisdiction of that state.

[8] ID.—DIVISION OF COMMUNITY PROPERTY—FRAUD.—If, in the course of a suit for divorce, the parties have agreed upon a certain plan of division of the community property, and the wife, relying upon the false representations of the husband, was wronged in such division, the court in another action will annul the division and decree another, notwithstanding the wife and her attorney had, in the first instance, the means of knowing the true state of facts.

[9] FINDINGS — MATERIAL ISSUES. — The system of express findings which prevails in this state requires a finding when there is a material issue, and this applies not only to issues raised upon allegations of the complaint, but issues raised upon affirmative defenses in the answer.

[10] FRAUD—ISSUES—EVIDENCE—FINDINGS.—When a judgment necessarily rests upon an issue of fraud raised by testimony introduced, controverting the new matter set up in the answer, the party relying upon such fraud is entitled to a finding upon it.

[11] HUSBAND AND WIFE—COMMUNITY PROPERTY — DIVORCE — ACTION IN PARTITION—FRAUD.—In an action in partition by a wife against her husband, wherein the former alleges that the parties are tenants in common in equal shares of certain real property, the finding of the trial court that the allegations of a special defense of the husband, which merely set up divorce proceedings and the rendition of judgment therein by a court in a foreign state, in which action it was alleged by the husband and admitted by the wife that there was no community property, were true, does not dispose of the issue of fraud, practiced by the husband upon the wife as to the community property, relied upon to nullify such judgment in so far as it related to the existence of community property.

[12] ID.—CONCEALMENT OF COMMUNITY PROPERTY—RIGHT OF WIFE TO SET ASIDE AGREEMENT.—In an action in partition by a divorced wife against her former husband, where the evidence without contradiction shows that the wife had no knowledge of the existence of community property which the husband purposely concealed from her, a finding of the trial court that an agreement between the parties in the divorce suit was intended to settle all their property rights of whatever nature is not supported by the evidence.

APPEAL from a judgment of the Superior Court of Placer County. J. E. Prewett, Judge. Reversed.

The facts are stated in the opinion of the court.

Lee Gebhart and Meredith, Landis & Chester for Appellant.

Orrin J. Lowell and George W. Hamilton for Respondent.

WASTE, J.—Plaintiff in this case appeals. It appears that the parties to the action intermarried in and were residents of the state of California. After they had been married a number of years, the defendant went to Nevada and instituted an action for divorce against his wife, this plaintiff, on the ground of willful desertion, his complaint alleging, among other matters, that there was no community property of the parties. The defendant in that action, this plaintiff, being a nonresident, service upon her was directed to be made by publication, and a copy of the complaint and summons in this action was delivered to her personally in this state. Thereupon an agreement in writing was entered into by the parties settling "the question of alimony and support." In consideration of the sum of five hundred dollars paid by the husband, this plaintiff released him "from all obligations, past, present or future, support, alimony, or any other obligations of support arising from the marriage contract." Other provisions in the agreement related to the maintenance and support of the minor child of the parties. As part of the same transaction it was agreed that the defendant in the divorce proceedings should, and she thereafter did, appear in the action. In her answer she admitted the allegation that there was no community property. Subsequently the Nevada court gave its decision in favor of the plaintiff, there finding, among other matters, that there was no community property belonging to the parties. Judgment of divorce was thereupon entered in favor of this defendant.

The judgment of divorce was entered March 15, 1916. On March 6, 1920, plaintiff brought this action for partition, alleging that since "the —— day of ——, 1916," she and the defendant, her former husband, had been and were tenants in common in equal shares of certain real property in this state. By the prayer of an amended complaint she sought to be let into possession with the defendant, and prayed for an accounting and for one-half of the accrued

rents, issues, and profits. Defendant, answering, denied the claim of plaintiff in and to the property, and by way of estoppel against plaintiff asserting any right or title therein, pleaded the divorce proceedings and the decree had and rendered in the Nevada court. He also prayed for a reformation of the agreement entered into by the parties pending the divorce action, to include "the property of the marriage," and to have inserted therein provisions to the effect that this plaintiff accepted the sum of five hundred dollars in full payment of all claims for alimony and support, and of "all rights and claims . . . to all property," and remitted, released, discharged, and satisfied all the rights and claims to the property which she might otherwise have. The trial court held defendant to be the sole and exclusive owner of the property. It also held that the plaintiff was estopped from asserting any claim to an interest therein by reason of the divorce proceedings had in the state of Nevada, and that defendant was entitled to have the contract between the parties reformed as prayed for. Judgment was entered in defendant's favor, and plaintiff has appealed.

[1] The first point involved in the appeal is as to the effect of the decree rendered by the district court of the state of Nevada in the divorce action between these parties. It is the contention of the appellant that the decree has no extraterritorial force outside the state of Nevada, and cannot directly affect the title to real estate in California. She also attempts to refute the claim of the respondent that she is estopped by the divorce proceedings from asserting an interest in the community property in this state. Her position is that no disposition of the community property was brought about in the divorce action, and that the parties became and have remained tenants in common therein. If that be true, and appellant be not estopped, their respective rights may be enforced in an independent action. (*De Godey* v. *Godey,* 39 Cal. 157, 163; *Biggi* v. *Biggi,* 98 Cal. 35, 38 [35 Am. St. Rep. 141, 32 Pac. 803]; *Kirschner* v. *Dietrich,* 110 Cal. 502, 505 [42 Pac. 1064]; *Ambrose* v. *Moore,* 46 Wash. 463 [11 L. R. A. (N. S.) 103, 90 Pac. 588].) The rule applies where the action is brought in one state and the property is situate in another state. (*Buck-*

*ley* v. *Buckley,* 50 Wash. 213 [126 Am. St. Rep. 900, 96 Pac. 1079]; *Gratton* v. *Weber,* 47 Fed. 852.)

[2] Appellant's first contention is unquestionably correct. That the courts of one state cannot make a decree which will operate to change or directly affect the title to real property beyond the territorial limits of its jurisdiction must be conceded. The doctrine that a court, not having jurisdiction of the *res,* cannot affect it by its decree is firmly established. (*Title Ins. Co.* v. *California Dev. Co.,* 171 Cal. 173, 197 [152 Pac. 542]; *Fall* v. *Eastin,* 215 U. S. 1, 11 [17 Ann. Cas. 853, 23 L. R. A. (N. S.) 924, 54 L. Ed. 65, 30 Sup. Ct. Rep. 3, see, also, Rose's U. S. Notes]; affirming 75 Neb. 104 [121 Am. St. Rep. 767, 106 N. W. 412, 113 N. W. 175]; *Sharp* v. *Sharp,* 65 Okl. 76 [L. R. A. 1917F, 562, 166 Pac. 175]; *Rodgers* v. *Rodgers,* 56 Kan. 483 [43 Pac. 779]; 19 Cor. Jur., p. 367.) [3] By means af its power over the person of the parties before it, a court of equity may in proper cases compel them to act in relation to property not within the jurisdiction, but its decrees do not operate directly upon the property nor affect the title. They are only made effectual through the coercion of the parties, by directing some action on their part, such as the execution of conveyances or the cancellation of instruments. (*Fall* v. *Eastin, supra.*) The reason for the rule is that jurisdiction to affect the title to real estate by a judgment *in rem,* or directly against the thing itself, exists only in the courts of the state wherein the land is situated. "No principle is more fundamental or thoroughly settled than that the local sovereignty, by itself or its judicial agencies, can alone adjudicate upon and determine the status of lands and immovable property within its borders, including their title and its incidents and the mode in which they may be charged or conveyed. Neither the laws of another sovereignty, nor the judicial proceedings, decrees and judgments of its courts, can in the least degree affect such lands and immovable property." (*Bullock* v. *Bullock,* 52 N. J. Eq. 561, 565 [46 Am. St. Rep. 528, 27 L. R. A. 213, 30 Atl. 676]; *Proctor* v. *Proctor,* 215 Ill. 275, 277 [106 Am. St. Rep. 168, 69 L. R. A. 673, 74 N. E. 145]; *Tiedemann* v. *Tiedemann,* 172 App. Div. 819, 158 N. Y. Supp. 851 [affirmed in 225 N. Y. 709, 122 N. E. 892].) [4] It results, therefore, that while the court of Nevada, in which state the husband was domiciled, had juris-

diction to grant a divorce, upon service by publication, against the wife, who was a nonresident, it had no power to settle the title to lands in California; and a general order, finding, or decree made by it, purporting to bar the rights of the wife in the real property of the parties, or either of them, was ineffectual, so far as the property in this state is concerned. (*Rodgers* v. *Rodgers, supra.*)

Respondent argues that the judgment of a foreign court can act *in personam,* regardless of the *locus* of the property involved; that when plaintiff appeared in the Nevada court, and answered, that court had jurisdiction of the parties and the subject matter of the action; that plaintiff subjected herself and her property rights to the decision of the court. "Certainly, the Nevada court," he continues, "could have determined title to that property and have required a deed if necessary. It must then have had a species of jurisdiction over that property." In this connection respondent invokes the decision of the United States supreme court in *Bates* v. *Bodie,* 245 U. S. 520 [L. R. A. 1918C, 355, 62 L. Ed. 444, 38 Sup. Ct. Rep. 182], but that case does not help his position. A wife, in Arkansas, sought a divorce, return of money loaned to her husband, and alimony. She alleged that her husband owned real and personal property, including land in Nebraska. The decree granted the divorce as prayed, and adjudged that the wife recover a stated sum "in full of alimony and all other demands set forth in the cross-bill." It also recited that such judgment was rendered by consent. Later, and after the husband had paid the judgment, the wife sued him in Nebraska to obtain further alimony out of the Nebraska land, claiming that the Arkansas court had no jurisdiction to take it into consideration, and had not done so. The husband set up the decree of the Arkansas court as an estoppel and a complete bar to the wife's right to recover additional alimony under the laws of Nebraska. His plea was denied by the state court. On a writ of error to the supreme court of the United States, the court held, in so far as the point we are now considering is concerned, that while the Arkansas court had no jurisdiction of the Nebraska lands so as to deal with them specifically, it had jurisdiction of the controversy between the parties, and all that pertained to it, including the property *resources* of the husband, and what part of them should

be awarded to the wife, and might require the husband to perform any order it might make, as it actually had done in that case by requiring him to deposit security for payment of the alimony. It appeared from the record under review that the Arkansas decree was rendered by the consent of the husband on condition that no appeal be taken by the wife from the judgment and decree; that the amount had been secured as directed, and had been paid as required to be paid. For these reasons, and it being admitted that consent would give jurisdiction to the state court to render a money judgment for alimony, the court was of the opinion that due faith and credit required by the constitution of the United States was not given to the decree. The judgment of the state court was reversed.

What respondent terms "a species of jurisdiction," therefore turns out to be only the jurisdiction of the court over the controversy between the parties, and its power to enforce obedience to its decrees by coercive measures so long as the parties are within its territorial limits. *Title Ins. etc. Co.* v. *California Dev. Co.,* 171 Cal. 173 [152 Pac. 542], does not aid the respondent. It was very plainly stated by this court in that case that the courts of California cannot make a decree which will operate to change title to property beyond the territorial limits of the state. It was pointed out (page 192) that what the decree did in that case was to direct a sale of property in California and of *shares of stock* in the Mexican corporations held by persons who were within this state, and who had been made parties to the action. [5] If jurisdiction does not exist, the enforcement of a judgment rendered in one state is not compelled by the due faith and credit clause of the constitution. (*Wisconsin* v. *Pelican Ins. Co.,* 127 U. S. 265, 291 [32 L. Ed. 239, 8 Sup. Ct. Rep. 1370, see, also, Rose's U. S. Notes] ; *Andrews* v. *Andrews,* 188 U. S. 14, 39 [47 L. Ed. 366, 23 Sup. Ct. Rep. 237].) [6] Consequently, the appearance of the parties in the Nevada court, and the allegation and admission as to there being no community property, added nothing to the effect of the Nevada decree on property in this state. Neither a party, nor both parties, can vest a court with a jurisdiction to which it is a stranger. (*King* v. *Kutner-Goldstein* Co., 135 Cal. 65, 67 [67 Pac. 10].)

The decree in the Nevada action is invoked by the respondent against the appellant as an estoppel upon yet another ground. Starting with the proposition that a judgment is a contract in the highest sense of the term (*Wallace* v. *Eldredge,* 27 Cal. 498, 499; *London G. & A. Co.* v. *Industrial Acc. Com.,* 181 Cal. 460, 465 [184 Pac. 864]), respondent, in effect, argues that appellant acceded to the propositions embraced in the divorce complaint, and in her answer admitted and consented to the allegation that there was no community property of the parties existing at the time the action was begun; that when the judgment was rendered upon such complaint and answer, it became in effect a contract between the parties that the judgment should be final in respect to matters embraced in the allegations of the complaint and the prayer for relief; and although the decree of divorce was silent as to property, in view of the allegations contained in the complaint and answer, and in the light of the findings, it was tantamount to an adjudication that there was no community property of the parties (*Brown* v. *Brown,* 170 Cal. 1, 6 [147 Pac. 1168]), and now operates as an estoppel in contract. **[7]** One answer to this contention is, the allegation of the complaint and the answer thereto that there was no community property should be construed only as an allegation and an admission that there was no community property within the state of Nevada, because that was the extent to which such issue could be submitted to the jurisdiction of that state. By way of a further answer, appellant advances the contention that in so far as relates to any property right involved, it is not binding upon her for the reason that she was induced to enter into the admission that there was no community property through the intentional concealment and deliberate fraud of the respondent, which resulted in withdrawing the issue as to the existence of community property from the consideration of the court and preventing a trial thereon. (*Milekovich* v. *Quinn,* 40 Cal. App. 537, 547 [181 Pac. 256].) **[8]** If, in the course of a suit for divorce, the parties have agreed upon a certain plan of division of the community property, and the wife, relying upon the false representations of the husband, was wronged in such division, the court in another action will annul the division, and decree another, notwithstanding

that the wife and her attorney had, in the first instance, the means of knowing the true state of facts. (*Senter* v. *Senter,* 70 Cal. 619 [11 Pac. 782].)

The evidence tending to show that appellant was fraudulently prevailed upon by the respondent to refrain from submitting an issue as to the existence of community property to the consideration of the court in the divorce action, and was deceived into accepting the sum of five hundred dollars in full settlement of all claims for support, led Mr. Justice Hart, who wrote the opinion in the district court of appeal reversing the case, to say: "There could be nothing clearer than that the foregoing testimony . . . plainly shows these facts: First, that the plaintiff, when signing the agreement [the alimony settlement], had absolutely no knowledge of the land in dispute or that the defendant owned the same or any land; second, that the defendant purposely concealed from the plaintiff the fact that he bought the land during their married life and owned it when the agreement in question was made; third, that the defendant, with a design to defraud the plaintiff of her community interest in the property, caused the same to be put in the name of his brother and to remain standing in the latter's name until after the Nevada decree divorcing him from the plaintiff was entered.

"That the designed concealment from the plaintiff by the defendant of the fact that the property in dispute belonged to him and to their community and not to his brother in whose name the property stood when the plaintiff signed the agreement in question was in fraud of her rights, cannot, of course, be questioned. Indeed, the conduct of the defendant with reference to said property—his repeated representations to the plaintiff on the occasions when he endeavored to urge her to institute an action for divorce that he owned no property and allowing the property in dispute to remain in his brother's name until after the entry of the Nevada divorce decree—amounted to positive or actual fraud. (Sec. 1572, subd. 3, Civ. Code.)"

[9] In the face of these convincing facts, the trial court merely found that the allegations and averments of the answer "pleaded by way of bar and estoppel of the plaintiff" were true. It made no express finding on the issue of fraud established by the evidence offered by the plaintiff.

The system of express findings (secs. 632 and 633, Code Civ. Proc.), which prevails in this state, requires a finding when there is a material issue. This applies not only to issues raised upon allegations of the complaint, but issues raised upon affirmative defenses in the answer. (2 Hayne on New Trial, rev. ed., sec. 240, p. 1319, and cases there cited.) If a replication were permissible, plaintiff, by such a pleading, could have set up the facts constituting the fraud alleged to have been committed by the defendant; but, under our system of pleading, a replication to the answer has no place. It is supplied by operation of law through the application of section 462 of the Code of Civil Procedure, which provides that the statement of any new matter in the answer, in avoidance or constituting a defense, must, on the trial, be deemed controverted by the opposite party. Ordinarily, when a cause of action or a defense rests upon fraud, the facts constituting the fraud must be pleaded. But the necessity of proving fraud may appear only after the answer of the defendant is in. In such case, a plaintiff may introduce on the trial evidence which countervails or overcomes any new matter as if it were inserted in a replication and pleaded with all the precision and fullness which the strictest rules of law require. (*Colton Land & Water Co.* v. *Raynor,* 57 Cal. 588, 589; *Brooks* v. *Johnson,* 122 Cal. 569, 571 [55 Pac. 423].) **[10]** When a judgment necessarily rests upon an issue of fraud raised by testimony introduced, controverting the new matter set up in the answer, the party relying upon such fraud is entitled to a finding upon it. (*Moore* v. *Copp,* 119 Cal. 429, 436 [51 Pac. 630].) In *Sterling* v. *Smith,* 97 Cal. 343 [32 Pac. 320], it was urged that certain findings were outside of any issue made by the pleadings, for the reason that the complaint did not contain any allegations of fact constituting fraud of any character, which allegations, it was argued, were absolutely essential in order to admit evidence upon the subject. The court held the contention was not tenable for the reason that the evidence supporting the findings was introduced in response to averments of new matter in the answer.

**[11]** The finding of the trial court that the allegations and averments of the special defense, which merely set up the divorce proceedings and the rendition of the judgment

by the Nevada court, were true, did not, in the remotest
sense, dispose of the issue of fraud relied upon by appellant
to nullify such judgment in so far as it related to the
existence of community property. The evidence bearing
upon such issue has been brought here. Therefore, the court
may not indulge in a presumption that, had findings been
made on the subject of fraud, they must have been con-
sistent with other findings actually made and relied on by
respondent to support the judgment. It is only in the
absence of such evidence that the presumption may be in-
dulged in. In this case, if a finding favorable to the de-
fendant on the issue of fraud had been made, it would
have been contrary to the evidence.

[12] The trial court decreed a reformation of the agree-
ment entered into by the parties prior to the Nevada divorce
proceedings by inserting a provision whereby appellant not
only accepted the sum of five hundred dollars in full pay-
ment of temporary and permanent alimony and support,
but in like payment of all rights and claims to property,
and released and satisfied all right and claim to property
she might have. Of this portion of the decree the district
court of appeal correctly said: "It necessarily results from
the forgoing considerations that the finding to the effect
that the agreement in question was intended by the parties
to settle all their property rights of whatsoever nature is,
in so far as the property described in the complaint is con-
cerned, wholly without evidentiary justification and, there-
fore, that portion of the decree declaring that the agree-
ment does not express the true intention of the parties and
that the same should be so reformed as to embrace within
its scope a provision whereby the plaintiff expressed an
intention to release to the defendant her community in-
terest in the real property involved in this controversy is
entirely without support." No other conclusion would be
warranted. We are unable to perceive how it can be se-
riously contended that the appellant intended by the con-
tract to surrender her claims to community property, the
existence of which it is conceded she had no knowledge, and
which the evidence, without contradiction, shows was pur-
posely concealed from her.

If it be contended that any of the findings tend to sup-
port the conclusion of law that the defendant is the sole

and exclusive owner of the land in controversy, they are contrary to the undisputed evidence, and to the admissions of respondent here, that whatever interest he had in the property at the time of the Nevada divorce was obtained from money acquired after his marriage with appellant. If no other facts can be developed upon a retrial, it would seem to necessarily follow that, the divorce of the parties having been granted without any disposition of the community property, appellant is the owner of one-half of such property as tenant in common with respondent. (*Estate of Brix*, 181 Cal. 667, 676 [186 Pac. 135].)

The judgment is reversed.

Myers, J., Kerrigan, J., Seawell, J., Lennon, J., Lawlor, J., and Wilbur, C. J., concurred.