[Civ. No. 6945. Third Dist. Sept. 30, 1943.]

HANNAH LAUNER, Respondent, v. F. W. GRIFFEN, as Administrator, etc., et al., Appellants.

Henderson Stockton, Gerald M. Desmond, Otis D. Babcock, District Attorney, and Frank Bottaro, Assistant District Attorney, for Appellants.

Elliott, Atkinson & Sitton for Respondent.

PEEK, J.—Defendants, the California and Arizona administrators of the estate of plaintiff's deceased husband, appeal from a judgment quieting plaintiff's title to certain real property situated in the county of Sacramento, and denying similar relief on their cross-complaint. The property in question was acquired in 1926 by plaintiff and her deceased husband as joint tenants with right of survivorship.

Subsequently plaintiff and her husband moved to the State of Arizona where, during the fall of 1938, Adolph Launer instituted an action for divorce. His complaint alleged, among other things, "that the parties are possessed of certain [described] community property." Within the same paragraph he alleged, "the following realestate held by the parties to this action as joint tenants with right of survivorship, to-wit: The South half (S½) of the Southwest Quarter (SW¼) of Section 21, Township 7 North, Range 5 East, and North Quarter (N¼) of Northwest Quarter (NW¼) of Section 28, Township 7 North, Range 5 East, M. D. B. & M.,

in the County of Sacramento, State of California," should be divided equally between the parties. The prayer to said complaint prayed "for a division of said community property. . . ."

The answer and cross-complaint of the defendant, the plaintiff herein, admitted the allegations of plaintiff's complaint relative to the property, and as a part of the prayer to her cross-complaint she requested "that the community property of the parties be determined and divided equally between them."

Thereafter on March 6, 1939, the court made its order granting a decree of divorce to the plaintiff and further ordered that the real property situated in Sacramento County "be and the same is hereby divided between plaintiff and defendant, and said plaintiff and said defendant are hereby awarded each an undivided one-half ($\frac{1}{2}$) interest therein and thereto."

During the month of November, 1939, Adolph Launer was killed as the result of an automobile accident. Thereafter Hannah Launer filed a petition in Pinal County, Arizona, for letters of administration of his estate, in which she alleged "that your petitioner is a co-owner of real estate with and a creditor of said deceased." During the month of January of the following year an order appointing petitioner as administratrix was issued. Shortly after her qualification as administratrix she returned to Sacramento from the State of Arizona and ever since has continued to make her home in said city. Upon her return she filed her petition to terminate the joint tenancy in the real property situated in Sacramento County, and on April 1, 1940, the court made its order terminating said joint tenancy and decreeing that she was the sole owner thereof.

She did nothing further in regard to the estate until the month of November, 1940, when her counsel herein prepared and forwarded to her counsel in Arizona her final account and report as administratrix of the estate of Adolph Launer. Included therein was a personal claim "for rent due on land in Sacramento County, California, $250.00."

F. W. Griffen, one of the defendants in the present action, filed objections to said account, his objection being primarily predicated upon that part of the decree entered in the divorce action wherein the Arizona court ordered the joint tenancy property in Sacramento County divided equally between the parties. He also alleged that the proceedings to terminate

the joint tenancy were a fraud upon the Superior Court of Sacramento County, and a violation of her trust and duties as administratrix of the estate in that she failed to disclose the decree of divorce as previously entered by the Arizona court, and that also the claim of $250 was not valid by reason of the said divorce decree.

After a hearing upon the objections to said account the Superior Court of Pinal County, Arizona, made and entered its decree and found "that the real property . . . situated in the County of Sacramento . . . was . . . the community property of the deceased Adolph Launer and administratrix Hannah Launer on the 6th day of March, 1939 . . . ," and that on the 6th day of March, 1939, the divorce court duly made and entered an order accordingly, dividing said community property equally between said deceased Adolph Launer and said administratrix Hannah Launer. The court further found at all times thereafter said real property was owned by said deceased and said Hannah Launer as tenants in common; that said Hannah Launer has removed herself permanently from the State of Arizona and has refused and still refuses to return. Thereupon the court ordered "that Hannah Launer shall, within ten days from and after the date hereof, make and execute to the Estate of Adolph Launer, Deceased, a good and sufficient deed of conveyance conveying to said estate an undivided one-half interest" in the Sacramento County property.

The court further ordered that should Hannah Launer fail to make and execute the conveyance as directed, the Clerk of the Superior Court of Pinal County should "execute and deliver" a deed conveying the real property in question. Hannah Launer did not comply with the order, and T. J. Marks, Clerk of said Pinal County Superior Court, acting as the commissioner appointed by the court and in accordance with its decree, executed a deed covering the property in question. Thereafter said deed was recorded in the office of the County Recorder of Sacramento County on September 2, 1941, thereby becoming a cloud upon the title to the property, and the basis of the present quiet title action.

At the conclusion of the hearing of the present action the trial court found that Adolph and Hannah Launer acquired title to the property in question as joint tenants with right of survivorship and not as tenants in common, and that to the date of his death they continued to hold the property as joint tenants; that during that period no act was done by

them to change or modify the joint tenancy, and that upon his death the property vested in her as the surviving joint tenant, and that ever since she has been and now is the owner thereof in fee simple; that the decree of divorce ''did not in any wise affect, change or modify the said joint tenancy title . . .; that said Hannah Launer had no knowledge of the proceedings for her removal [as administratrix] or of said objections to her account . . . ; that she was not a party to any proceedings thereafter had in the said Superior Court of Pinal County relative to said account or the objections thereto, and that none of the proceedings in probate in the said State of Arizona, nor any orders made therein . . . , in any wise affected, changed or modified the joint tenancy title.'' The court then concluded that plaintiff was the owner in fee simple of the described real property, and as such was entitled to have her title quieted as against the claims of defendants, and forever barred and restrained said defendants from claiming any interest adverse to her in the real property. Judgment was entered accordingly.

It is contended by appellants in this appeal that (1) the allegations of the parties in the divorce proceeding amounted to an agreement that the joint tenancy be dissolved; that (2) the decree of divorce entered by the Superior Court of Pinal County, Arizona, divided the Sacramento County real property equally between them, and (3) the decree of the probate court in the same county of Pinal is conclusive upon the parties that the joint tenancy estate had been terminated by the actions and intent of the parties in said divorce proceeding.

It is appellants' further contention that inasmuch as a joint tenancy may be terminated by an agreement of the parties the allegations of both parties to the divorce proceedings amounted to such an agreement, or in any event, when the decree was entered by the court and the time for appeal had passed, such judgment then became a binding contract between them and now operates as an estoppel in the present case. Of course to reach such a conclusion it must be accepted that the parties had a definite intent in mind to terminate the joint tenancy. In this we cannot agree. When property is conveyed to a husband and wife as joint tenants the form of the conveyance is such as to destroy the statutory presumption that the property is community (*Siberell* v. *Siberell*, 214 Cal. 767 [7 P.2d 1003]), and that thereby such deed creates a joint tenancy in which the interests of husband and wife

are separate property. (*Young* v. *Young*, 126 Cal.App. 306 [14 P.2d 580].) Appellants have shown nothing to take the present cause out of this rule or to bring it within the rule stated by this court in *Cummins* v. *Cummins*, 7 Cal.App.2d 294 [46 P.2d 284], that ''a conveyance . . . to a husband and wife as joint tenants does not necessarily . . . preclude the idea of their holding the same as community property.'' Therefore, to hold that the allegations of the complaint which separately set forth and described the community and joint tenancy property, and the prayer of the answer which asked solely for a division of the community property amounted to an intent of the parties to divide the joint tenancy property would indeed be a strained construction to place upon such acts.

The case of *Taylor* v. *Taylor*, 192 Cal. 71 [218 P. 756, 51 A.L.R. 1074], which factually is very similar to the present case, would seem to be a complete answer to appellants' second contention. There a husband procured a Nevada decree in which the wife, a California resident, appeared. In her answer she admitted the allegations of the complaint that there was no community property and entered into a written agreement providing, in consideration of the payment of a certain sum, she would release the husband from further obligations of support, and also would relinquish all of her community property rights. The Nevada decree found that there was no community property. Subsequently she brought an action in California seeking partition and an accounting in respect to certain California real property. The defendant there, as here, urged the estoppel of the Nevada decree on the basis that her answer to the divorce action admitted the allegation that there was no community property; that when the judgment was rendered upon such complaint and answer it became, in effect, a contract between the parties (the same conditions as are urged by appellants here), and that therefore the judgment was final in respect to the matters embraced in such allegations. But the court held ''the allegations of the complaint, and the answer thereto that there was no community property should be construed only as an allegation and an admission that there was no community property within the State of Nevada, because that was the extent to which such issue could be submitted to the jurisdiction of that state.'' The court, however, expressly recognized that by means of its power over the person of the parties before it, that a court in equity may compel the parties to act in relation to prop-

erty not within its jurisdiction, but its decrees do not operate directly upon the property nor affect the title, and significantly added: "They [orders] are only made effectual through the coercion of the parties." And further held that the Nevada court "had no power to settle the title to lands in California; and a general order, finding or decree made by it, purporting to bar the rights of the wife in the real property of the parties, or either of them, was ineffectual, so far as the property in this state is concerned. . . . The appearance of the parties in the Nevada court, and the allegation and admission as to there being no community property, added nothing to the effect of the Nevada decree on property in this state. Neither a party, nor both parties, can vest a court with a jurisdiction to which it is a stranger."

Then if such allegations did not constitute such an agreement it is difficult to understand how an order not *in personam* would have the effect of dividing the property equally between them as maintained by appellants, for, as the Taylor case held, the power of a court of one state over property situated in another state can be effective only when the parties are before the court. Such a decree does not, of itself, act directly upon the property or affect the title but finds its only efficacy in the coercive effect which may be applied to the parties.

The appellants, nevertheless, contend that by virtue of section 21-1222, Arizona Code Annotated, 1939, no order *in personam* was necessary, as the divorce decree in effect was a conveyance by the parties. The section provides: "When the judgment is for the conveyance of real property, or for the delivery of personal property, the judgment may pass the title to such property without any act to be done by the party against whom the judgment is rendered."

In substantiation of this argument appellants cite the case of *Fall* v. *Eastin*, 215 U.S. 1 [30 S.Ct. 3, 54 L.Ed. 65], but we do not so understand that case. There, the United States Supreme Court, in passing upon a Washington decree of divorce wherein the court had jurisdiction of the parties and the subject matter, determined the equities in real property situated in Nebraska, and ordered the defendant to convey said Nebraska property to plaintiff. The plaintiff then sought to enforce the judgment in Nebraska against persons who had succeeded to the property with full knowledge of the Washington judgment, and without consideration. Such facts indicate a much stronger case than is presented on this appeal.

Nevertheless, the Nebraska court refused to enforce the Washington judgment directly and the Supreme Court sustained its action. If appellants' concept of the law is correct then it would follow that the Supreme Court would be compelled to give effect to the Washington decree. However, the court held that a court of equity, acting upon the person, may decree a conveyance of land in another state and enforce the execution of the decree by process against the person; that neither the decree nor any conveyance under it except by the party in whom title is vested is of any efficacy beyond the jurisdiction of the court, and that to concede such power would be to attribute to such a decree the force and effect of a judgment *in rem* by a court having no jurisdiction of the *res*.

The Arizona court had neither power nor jurisdiction to directly affect lands situated in California, and no act of the Arizona Legislature could confer territorial jurisdiction broader than the jurisdiction already lodged in the court.

Nor could the parties to the divorce action invest a court with jurisdiction to which it is a stranger. (*King* v. *Kutner-Goldstein* Co., 135 Cal. 65 [67 P.10] ; *Taylor* v. *Taylor, supra.*)

Without proper jurisdiction the enforcement of a judgment in one state attempting to operate upon real property in another, would not be compelled by the full faith and credit clause of the Constitution. (*Andrews* v. *Andrews, 188 U.S. 14 [23 S.Ct. 237, 47 L.Ed. 366] ; *Fall* v. *Eastin, supra.*)

Likewise we find no assistance for appellants from the cited case of *Redwood Investment Co.* v. *Exley*, 64 Cal.App. 455 [221 P. 973], wherein plaintiff in a quiet title action plead to a Kentucky decree of specific performance against defendant on his contract to convey to plaintiff. It was held he could rely on the Kentucky decree of specific performance, ordering defendants to convey to plaintiff according to the terms of their contract although "judgments or decrees, therefore, which are rendered in one state cannot of themselves affect title to lands in another," and that it was error to sustain the demurrer to the complaint. "But this does not mean that a decree directing a conveyance is without its effect *per se*. It may be pleaded as a basis or cause of action or defense in the courts of the state where the land is situated, and is entitled in such a court to the force and effect of record evidence of the equities therein determined, unless it be impeached for fraud." The present case does not come within such exception, that is, where a judgment *in personam* is entered

directing certain action by a party in regard to property outside the forum.

The courts of Arizona have not attempted extra-territorial jurisdiction but have followed the general rule enunciated in the cited cases, that:

"Where the subject-matter is situated within another state or country, but the parties are within the jurisdiction of the court, any suit may be maintained and remedy granted which directly affect and operate upon the person of the defendant, and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or to refrain from certain acts toward it, and it is thus ultimately but indirectly affected by the relief granted." (*Butterfield* v. *Nogales Copper Co.*, 9 Ariz. 212 [80 P. 345, 347].)

Since the operation of every judgment must depend upon the power of the court to render it, and since the jurisdiction to render a judgment *in rem* is lodged solely in the courts of the state wherein the real property is situated, then, by attempting to determine the title of California real property by the issuance of an order operating directly upon such title and not upon the person, the Arizona court assumed jurisdiction it did not have, and such order was void. Hence the subsequent action of the probate court, which of necessity had to be based solely on said decree of divorce, was likewise a nullity. Consequently, Hannah Launer, upon the death of Adolph Launer, became the surviving joint tenant, and by virtue of California law was the sole owner of the real property, unaffected by the cloud created by the deed of the probate court.

As was stated in *Taylor* v. *Taylor, supra.*

"No principle is more fundamental or thoroughly settled than that the local sovereignty, by itself or its judicial agencies, can alone adjudicate upon and determine the status of lands and immovable property within its borders, including their title and its incidents and the mode in which they may be charged or conveyed. Neither the laws of another sovereignty, nor the judicial proceedings, decrees and judgments of its courts, can in the least degree affect such lands and immovable property."

The judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.