[Civ. No. 16994.   Second Dist., Div. One.   July 19, 1949.]

Estate of GRACE BESSIRE JAMESON, Deceased.  JOHN
D. HOME as Administrator with Will Annexed, Respond-
ent, etc. v. DEAN BURTON BESSIRE et al., Appellants.

William A. Monten and John A. Ellis for Appellants.

Keane & Wickhem for Respondent.

DRAPEAU, J.—This is an appeal by remaindermen from an order approving report of administrator with the will annexed concerning the status of certain properties, determining that they were held in joint tenancy and therefore not assets of the instant estate; ordering partial distribution of a life estate in real property to the life tenant, and instructing said administrator concerning the payment by the remaindermen of their proportionate share of costs of administration.

Grace Bessire Jameson died on July 10, 1946, leaving a will which was admitted to probate on October 7, 1946, by the terms of which she devised to her husband, James Marion Jameson, a life estate in a parcel of real property which she declared was her separate property, and in the event of his death, or *if he did not survive distribution of her estate,* said real property to go in equal shares to her nephews, appellants here.

Decedent declared that with the exception of such parcel of realty "all other property that I own at the date hereof is community property owned by myself and my husband; it is my intention to hereby dispose of all property that I am entitled to dispose of by law." All the rest and residue of her estate, decedent devised and bequeathed to her husband "if he survives distribution of my estate"; otherwise it should go to her stepsons.

On March 24, 1947, petitioner was appointed administrator with the will annexed, and on April 22, 1948, he filed his first account current and petition for allowance of fees, to which one of the exceptions made thereto was that said administrator had not fully accounted for all the assets of the estate. Thereafter the court settled said account and found that said administrator did not have in his possession or under his control any property belonging to the estate other than as set forth in his account, the inventory and appraisement and the supplemental inventory and appraisement, and directed that "the administrator should investigate and determine whether or not there are other assets of the estate which should be brought into the estate."

Upon completion of his investigation, petitioner reported that "there were and are no other assets of this deceased which should be brought into the estate." Also, that he found "no evidence whatever of any agreement between deceased and James Marion Jameson that the foregoing property held in joint tenancy was to be considered, or was in fact, community property of said parties."

Based upon such report and the objections and demurrer of appellants thereto, the court made the order from which this appeal is taken, to wit:

A.  Settling the report of the administrator C.T.A.;

B.  Decreeing that there are no other assets belonging to deceased whatsoever which have not been included by such administrator in the inventory and appraisement;

C.  That any cash, bank accounts, automobile, trailer, stock, burial funds, or insurance jointly held by deceased and surviving husband "was and is joint tenancy property and no part of the estate of said deceased."

D.  "That there are sufficient funds available in said estate, from the income from the real property to which James Marion Jameson is entitled, to pay his proportionate share or charges, all fees and expenses; . . . that James Marion Jame-

son is entitled to partial distribution of his life estate in the real property as prayed for''; and ordered such distribution.

The court further ordered that the administrator C.T.A. compute the amount necessary to close and settle the estate ''including all charges, expenses of administration, statutory and extraordinary Administrator C.T.A. and attorney fees''; prorate the same between remaindermen and life tenant ''after first exhausting the small amount of residue in said estate''; and ''There being no funds available in said estate with which to pay the remaindermen's pro rata share of the total amount necessary to close said estate''; that administrator make demand for payment by remaindermen within 30 days, and for failure to pay to sell remaindermen's interest in order to raise funds to pay such share, any excess to be distributed to said remaindermen.

Appellants urge that the court erred in decreeing that the income from the real property from the date of death of testatrix belongs to the life tenant, and assert that ''if the gift of the life estate does not vest until Mr. Jameson survive distribution,'' then the income from the real property is now available for expenses of administration; hence there is no need of contribution from appellants.

The condition here imposed is worded as follows: *''If my husband, James Marion Jameson, survives distribution of my estate,* I give, devise and bequeath to him a life estate for the remainder of his natural lifetime in and to the following described real property: (description) . . .

''Upon the death of my husband, his life estate shall forthwith terminate, or *if my husband does not survive distribution of my estate,* said real property shall, in either event, go in equal shares to my nephews. . . .

''All the rest and residue of my estate, I give, devise and bequeath to my husband, James Marion Jameson, *if he survives distribution of my estate.* . . .

*''If my husband,* James Marion Jameson, *does not survive distribution of my estate,* I give, devise and bequeath all the rest and residue of my estate in equal shares to my stepsons. . . .''

In discussing the difference between contingent and vested remainders, the following appears in *Estate of Blake,* 157 Cal. 448, 459 [108 P. 287]: ''The general rule is that where the legacy or devise is given to a person to be paid at a future time, it vests immediately. When, however, it is not given until a future time it is contingent and does not vest until

that time occurs. As said in the note to *Goebel* v. *Wolf*, 113 N.Y. 405 [10 Am.St.Rep. 470, 21 N.E. 388], quoted approvingly by this court in *In re Rogers*, 94 Cal. 526, 530 [29 P. 962] : 'The leading inquiry upon which the question of vesting or not vesting turns is, whether the gift is immediate, and the time of, payment or of enjoyment only postponed, or is future and contingent, depending upon the beneficiary arriving of age, or surviving some other person, or the like . . . According to the prevailing doctrine, a postponement of the time of payment will not of itself make a legacy contingent unless it be annexed to the substance of the gift; or, as it is sometimes put, unless it be upon an event of such a nature that it is to be presumed that the testator meant to make no gift unless that event happened. Thus, where the legacy is given, payable or to be paid when the legatee attains the age of twenty-one years, the legacy vests immediately upon the death of the testator. It is a present gift, the time of payment only being postponed; but where the time is annexed, not to the payment only, but to the gift itself—as when the legacy is given to the legatee at twenty-one, or ''if'' or ''when'' he attains the age of twenty-one—the legacy does not vest until the legatee attains that age. His attaining the age specified is a condition precedent; and if the condition be not fulfilled the legacy never vests.' ''

Section 142, Probate Code, provides: ''A condition precedent in a will is one which is required to be fulfilled before a particular disposition takes effect. It is to be deemed performed when the testator's intention has been substantially, though not literally, complied with. Nothing vests until such condition is fulfilled, except where fulfillment is impossible. . . .''

In *Estate of Cross*, 163 Cal. 778, 781 [127 P. 70], joint and mutual wills of husband and wife provided: ''In the event of the death of either one of the testators herein, *if the survivor shall continue living for the period of thirty days thereafter*, then . . . the whole estate of the deceased testator shall pass to the surviving husband or wife . . .''

It was there argued that said clause was invalid because to sustain it would ''suspend the vesting of his whole estate entirely for a period of thirty days after his death, leaving the title to all his property in abeyance and nowhere and preventing its vesting anywhere for a period of thirty days.''

The court held: ''But the answer to this is that it is not humanly possible for a testator to do any such thing. The

law itself intervenes and provides for the vesting of title. There was no failure to vest during the period of thirty days fixed by the will as the duration of the survivor's life before the terms of the will took effect. The rules and laws of inheritance and succession interposed wherever the will was silent, with the result that title vested in the heirs, devisees, or legatees subject to divesture if either spouse should survive the other for thirty days." (See, also, *Estate of Riemer,* 69 Cal.App.2d 634, 636 [159 P.2d 677].)

Applying the foregoing principles of law to the facts herein, it is clear that the devises to the husband were made upon a condition precedent: that he survive distribution of testatrix's estate. Accordingly neither his life estate in the realty nor his interest in the residue could vest until such condition was fulfilled. Until that time he had a mere expectancy in the property devised. In the interim, title to the life estate and to the residue vested in the remaindermen, i. e., the nephews and stepsons, respectively, subject to divestiture upon fulfillment of the condition.

With respect to the income from the realty, an executor or administrator is entitled to the possession of, and is chargeable with, all the property of a decedent, including real estate and all the income, rents, issues and profits thereof, during pendency of administration. (Prob. Code, §§ 581 and 920.) "*This right* (to possession) *is given to the end that the rents and profits may be applied to the payment of debts and charges.*" (11B Cal.Jur. § 847, p. 256.) Moreover, as stated in 11A California Jurisprudence, section 18, page 67: "The objects of probate proceedings are to administer and settle the estates of deceased persons—to gather and preserve the property, pay debts and distribute the balance to the persons entitled thereto. . . . Because administration is conducted mainly for the purpose of securing to creditors payment of their claims, for that purpose the assets are subjected to the jurisdiction of the court, and to that extent administration is a proceeding for the benefit of creditors. When these payments have been accomplished, in the absence of express provisions in the will, the estate is to be distributed."

Therefore, the court's finding that the surviving husband is entitled to receive the income from the realty from the date of death of testatrix is erroneous. Also, since expenses of administration constitute preferred charges (Prob. Code, §§ 950 and 951), and the income in the hands of respondent is suf-

ficient to cover such expenses, the court's order requiring appellants to contribute thereto, is likewise in error.

Appellants next contend that the court erred in denying them the right to inquire into the contents of Mr. Jameson's will. It is argued that since husband and wife executed separate, companion wills on the same day, the wife declaring that "all other property that I own at the date hereof is community property owned by myself and my husband," the contents of the husband's will became material in order to discover if the two wills constituted an agreement between them to convert property then held in joint tenancy into community property.

At the instant hearing, Mr. Jameson was asked by counsel for the appellants: "Did your will, made at the same time, describe the property the same as Mrs. Jameson's will?

"Mr. Keane: I object to that, your Honor, on the ground, first: that it is a *privileged communication*, because it was entered into by Mr. Jameson at that time, and that he is not required to testify with reference to it; on the further ground: that there is no evidence that the will is still in existence.

"The Court: It will be sustained."

Counsel for appellants then stated that at the hearing for probate of Mrs. Jameson's will before Judge Clark (the transcript of which is included in the record now before this court)—Mr. Keane testified in the presence of Mr. Jameson that Mrs. Jameson's will dated March 23, 1944, was prepared by him as attorney for Mrs. Jameson; that "She came into my office with her husband, James Marion Jameson, and they both executed wills at the same time, companion wills . . ."

Evidence was presented that customarily the parties held all their funds in "straight joint bank accounts, with a provision in the card that upon the death of one it went to the survivor"; that at death of wife there were two such accounts. Also that the personal property: an automobile, a trailer and two burial policies were paid for in part by husband from his own separate property and the balance from the joint accounts.

A declaration in a deed or other instrument that spouses are to take as joint tenants raises the presumption that the legal title is in the parties in accordance with such language *(Chamberlain* v. *Chamberlain,* 2 Cal.App.2d 684, 687 [38 P.2d 790]) ; and destroys the statutory presumption that the property is community; such conveyance creates a

joint tenancy in which the interests of the spouses are separate property. (*Launer* v. *Griffen*, 60 Cal.App.2d 659, 664 [141 P.2d 236]). Nevertheless, the case of *Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [146 P.2d 905], holds "It is the general rule that evidence may be admitted to establish that real property is community property even though title has been acquired under a deed executed in a form that ordinarily creates in the grantee a common law estate with incidents unlike those under the law of community property . . . It has in fact been held unequivocally that evidence is admissible to show that husband and wife who took property as joint tenants actually intended it to be community property. (*Hulse* v. *Lawson*, 212 Cal. 614 [299 P. 525]; *Jansen* v. *Jansen*, 127 Cal.App. 294 [15 P.2d 777]; see *Minnich* v. *Minnich*, 127 Cal.App. 1, 8 [15 P.2d 804]; *Horsman* v. *Maden*, 48 Cal.App. 2d 635, 640 [120 P.2d 92].)"

▮  Accordingly, appellants were entitled to prove by any means available to them that Mr. and Mrs. Jameson intended to convert their joint tenancy holdings into community property. If, as is contended, the spouses made companion wills, a declaration therein with respect to the community character of the property would tend to prove an agreement between them that they intended it to be so classified. Clearly such a statement by Mr. Jameson under the circumstances here presented would constitute a declaration against interest and therefore admissible in evidence against him. (Code Civ. Proc., § 1870, subd. 2.) See, also, *Mayfield* v. *Fidelity & Casualty Co.*, 16 Cal.App.2d 611, 617 [61 P.2d 83].)

Pursuant to section 738, Code of Civil Procedure, a will whether admitted to probate or not is admissible in evidence in an action to determine adverse claims to real or personal property, when the validity or interpretation of a gift, devise, bequest or trust under such will is involved. Obviously, respondent's objection that the will was a privileged communication and inadmissible, cannot be sustained. Apropos of this is a statement in 3 California Jurisprudence, 10-Year Supplement, section 72, page 569: "The rule as to privileged communications does not preclude the admission in evidence of conversations between husband and wife tending to show the absence of an intention to make a gift either in an action between the spouses, or in an action by a husband against the personal representative of the estate of his deceased wife. (*Durrell* v. *Bacon*, 138 Cal.App. 396, 403 [32 P.2d 644].)"

Appellant's point that the court erred in ordering partial distribution of Mr. Jameson's life estate in the realty without exacting a bond cannot be sustained. Under section 1001 of the Probate Code, the court may dispense with such bond under certain conditions which apparently were met in the instant cause.

For the reasons stated, the order appealed from is affirmed insofar as it decrees distribution of a life estate in the realty to Mr. Jameson. In all other respects, the order is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied August 4, 1949, and respondent's petition for a hearing by the Supreme Court was denied September 15, 1949. Carter, J., and Schauer, J., voted for a hearing.