Filed 9/5/25  Estate of Musko CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| Estate of MUSKO, JOAN, Decedent. | B341049 |
| | (Los Angeles County Super. Ct. No. 23STPB10480) |
| TAYLOR L. CLARK, Plaintiff and Appellant. v. TONJA WOELBER et al., Objectors and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie Santoro, Judge.  Reversed and remanded with instructions.

Taylor L. Clark, in pro. per., for Plaintiff and Appellant.

No appearance by Respondents.

This case arises from probate proceedings involving decedent Joan Musko and three of her four children, appellant Taylor Clark and objectors Tonja Woelber and Ruth Musko.[1] Appellant filed petitions for probate of lost will and to determine whether two letters written by decedent amended or revoked the family trust. The probate court dismissed the petitions, finding that it lacked jurisdiction over the matter as the estate consisted solely of real property located in Pennsylvania.

Appellant contends that the probate court erred in dismissing the petition and that it could exercise jurisdiction over the matter because decedent was domiciled in California at the time of her death. We agree. We therefore reverse the dismissal of appellant's petitions and remand the matter to the probate court for further proceedings.

## BACKGROUND

Decedent and her husband, Ernie Musko, established the Musko Family Trust in 2007, with their four children as beneficiaries and their home in Pennsylvania as the only trust asset. They amended the trust in 2010, removing their son, David, as a beneficiary. Ernie died in 2012. According to appellant, after decedent experienced a "serious health crisis" in 2017, she moved from Pennsylvania to live with appellant in California. Decedent died in Santa Monica, California on May 13, 2023 and was a resident of Los Angeles County at the time of her death.

In September 2023, appellant, in propria persona, filed a petition for probate of lost will in Los Angeles County Superior Court. In the petition, appellant alleged that both she and decedent were residents of Santa Monica, California at the time of decedent's death on May 13, 2023. Appellant estimated the estate's assets as $100 in personal property and the Pennsylvania real property, valued at $200,100. She also submitted two letters purportedly written by decedent to a Pennsylvania attorney as decedent's holographic will. In the letters, dated in May and June 2020, decedent requested the attorney's assistance in preparing a new deed for her

---

[1] We refer to Musko family members by first name to avoid confusion. Tonja and Ruth appeared and objected to the petitions below but have not filed a response in this appeal. The fourth sibling, David Musko, has not appeared in the proceedings.

home in Pennsylvania. Decedent told the attorney that the title to the property was held by the Musko Family Trust, of which she was the sole trustee, and she wanted to transfer title to appellant alone.

Objectors filed an objection to the petition and a contest to probate. They argued that the court lacked jurisdiction "to hear this matter or open a probate in California because there is no property in California to be probated. The subject property is in Pennsylvania." They also argued that the letters did not constitute a holographic will.

In April 2024, appellant filed a second petition, seeking to "determine whether trustor's handwritten instruments constitute an amendment to, or revocation of, the revocable living trust." She also filed a response to the will contest, arguing that jurisdiction in California was proper for probate because decedent was domiciled in California at the time of her death, citing California and Pennsylvania probate statutes.

Objectors moved for judgment on the pleadings as to both petitions. They again argued that the letters did not constitute a valid will or revocation or amendment of the trust.

At the July 15, 2024 hearing, the court indicated it was inclined to deny the petitions because "the only asset is the real property and the real property is located in Pennsylvania, and this Court does not have jurisdiction over real property in Pennsylvania." Appellant responded that the court "does have jurisdiction because even though the property is located in Pennsylvania, the decedent was domiciled here in Los Angeles County." Appellant argued that "Pennsylvania would not have jurisdiction to determine whether or not these handwritten documents constitute wills because the decedent was not domiciled in Pennsylvania." The court replied that "the case law says that as to *in rem* jurisdiction, when we're talking about something that is like real property, that it has to be within the borders of this city," citing *Taylor v. Taylor* (1923) 192 Cal. 71, 76 (*Taylor*). The court concluded that the decedent's domicile in California "doesn't necessarily mean that this Court has jurisdiction of whatever is in the trust or estate if that . . . real property is located outside of this state." The court accordingly denied the petitions with prejudice and denied objectors' motions as moot.

Appellant timely appealed.

## DISCUSSION

Appellant argues that the probate court erred in finding it lacked jurisdiction over decedent's estate because the only real property at issue was in Pennsylvania.  We agree that the court's conclusion was error.

The superior court's probate jurisdiction is governed by statute.  The court establishes jurisdiction over the administration of an estate by making findings at the hearing on the petition that the statutory fact and notice prerequisites have been satisfied. (Prob. Code, §§ 8005, subd. (b)(1), 8006[2]; *Estate of Stevenson* (2006) 141 Cal.App.4th 1074, 1087.)  As relevant here, when an interested person files a petition for probate in California, the court has subject matter jurisdiction if it finds as a "jurisdictional fact" that either "the decedent was domiciled in this state or left property in this state at the time of death."  (§§ 8000, 8005, subd. (b)(1)(B).)  "Domicile" for this purpose means the state where decedent resided with "the intention to remain either permanently or for an indefinite time without any fixed or certain purpose to return to the former place of abode."  (*Estate of Phillips* (1969) 269 Cal.App.2d 656, 659, quoting *DeYoung v. DeYoung* (1946) 27 Cal.2d 521, 524; see also *Estate of Wardani* (2022) 82 Cal.App.5th 870, 883.)  "Property" is "anything that may be the subject of ownership and includes both real and personal property and any interest therein."  (§ 62.)[3]

We review de novo questions of law, including issues of the jurisdiction and authority of the probate court.  (*In re Conservatorship of Estate of Kane* (2006) 137 Cal.App.4th 400, 405; see also *Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1123–1124.)

There is no dispute in the record before us that decedent was domiciled in California at the time of her death.  The superior court acknowledged that fact but nevertheless concluded that it lacked jurisdiction to adjudicate

---

[2]     All undesignated statutory references are to the Probate Code.

[3]     The court must also make findings regarding the decedent's date and place of death (§ 8005, subd. (b)(1)(A)) and confirm that notice of the petition to administer the probate estate has been published (*id.*, subd. (b)(1)(C)). Neither of these findings are at issue in this appeal.

4

appellant's petitions.  This was error.  The fact of decedent's domicile in California established subject matter jurisdiction before the probate court under section 8005, subdivision (b)(1)(B).  (See *Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1087 ["The principle of 'subject matter jurisdiction' relates to the inherent authority of the court involved to deal with the case or matter before it"]; see also, e.g., *In re Phillips' Estate* (1969) 269 Cal.App.2d 656, 665 [affirming finding of probate jurisdiction based on domicile].)

The court's conclusion that it only had jurisdiction if decedent was domiciled in California *and* left real property assets in the state was contrary to the express language of the statute.  (See § 8005, subd. (b)(1)(B).)  As our Supreme Court explained, "Generally speaking, a will should be submitted in the first instance to the forum at the domicile of the testator.  But in California a probate court may acquire jurisdiction over the estate of a deceased person in *either* of two situations: the domicile of such person within the state, *or* the presence of assets within the state." (*Estate of Estrem* (1940) 16 Cal.2d 563, 566–567, emphasis added.)  As the state of decedent's domicile at the time of death, California has jurisdiction over her estate.

We are not persuaded otherwise by the probate court's reliance on *Taylor, supra*, 192 Cal. 71.  In *Taylor*, the husband initiated divorce proceedings in Nevada in which the wife, a California resident, appeared. The parties entered into a settlement agreement providing that the wife released the husband from further obligations of support and alimony, and also relinquished all of her community property rights.  The Nevada court entered a divorce decree finding that there was no community property.  (*Id*. at p. 74.)  The wife later brought a partition action in California, regarding real property here.  (*Ibid*.)  The husband claimed that the wife had no right to the property based on the Nevada divorce decree.  (*Id*. at p. 75.)  The trial court agreed.

The Supreme Court reversed, holding that "while the court of Nevada, in which state the husband was domiciled, had jurisdiction to grant a divorce . . . against the wife, . . . it had no power to settle the title to lands in California; and a general order, finding, or decree made by it, purporting to bar the rights of the wife in the real property of the parties, or either of them,

was ineffectual, so far as the property in this state is concerned." (*Taylor, supra,* at pp. 76-77.)  The court explained that "jurisdiction to affect the title to real estate by a judgment in rem, or directly against the thing itself, exists only in the courts of the state wherein the land is situated." (*Id.* at p. 76.) Thus, the wife's admission in the Nevada case "that there was no community property should be construed only as an allegation and an admission that there was no community property within the State of Nevada, because that was the extent to which such issue could be submitted to the jurisdiction of that state." (*Id.* at p. 79.)

We find *Taylor* distinguishable.  In *Tischhauser v. Tischhauser* (1956) 142 Cal.App.2d 252, 255, the court found that a decree by a California court determining that certain asserts were community property, including real property in Colorado, did not violate *Taylor* as "[s]uch a decree does not operate directly upon the property nor affect the title."  Indeed, this distinction was recognized by the *Taylor* court, which acknowledged that "[b]y means of its power over the person of the parties before it, a court of equity may in proper cases compel them to act in relation to property not within the jurisdiction, but its decrees do not operate directly upon the property nor affect the title.  They are only made effectual through the coercion of the parties, by directing some action on their part, such as the execution of conveyances or the cancellation of instruments." (*Taylor, supra*, 192 Cal. at p. 76.)

"It is settled in California that a court having jurisdiction of the parties may adjudicate their rights to land located in another state and that the adjudication is res judicata and is to be accorded full faith and credit in the situs state regardless of whether the decree orders execution of a conveyance. Although such a decree cannot in itself change or determine title, and while a subsequent action for that purpose must be brought in the situs state, an adjudication, for example, that one of the parties is entitled to the property is binding in the subsequent action." (*Barber v. Barber* (1958) 51 Cal.2d 244, 247; see also *Rozan v. Rozan* (1957) 49 Cal.2d 322, 330; *In re Marriage of Economou* (1990) 224 Cal.App.3d 1466, 1479-1480; *Crowder v. Lyle* (1964) 225 Cal.App.2d 439, 448 [discussing "cases in which a local court controls the respective rights and duties of litigating parties with respect to land situated

6

in a foreign state; the local court . . . has no power to affect legal title to the land directly by its judgment . . .; but the local court concededly has the right to compel parties under its jurisdiction to effectuate directed dispositions with respect to the land"].)  Here, there was no dispute as to the court's personal jurisdiction over the parties, as they made a general appearance in the action, thereby waiving "any objection to the court's exercise of personal jurisdiction."  (*Roy v. Superior Court* (2005) 127 Cal.App.4th 337, 341; see also *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52 [""A general appearance operates as a consent to jurisdiction of the person.""].)

Thus, the superior court had jurisdiction to determine whether, as appellant claims, decedent's letters constituted a holographic will,[4] as any such order would not operate directly upon any out-of-state property.  As appellant points out, probate statutes expressly set forth the procedures to handle real property located in another state from the primary jurisdiction.  "[O]ut-of-state real property is traditionally handled through ancillary probate administrations in the foreign jurisdiction, the theory being that those jurisdictions subject local assets to their own probate administration to protect local creditors.  [Citation.]"  (*Conservatorship of Hume* (2006) 139 Cal.App.4th 393, 400; see also § 12500 et seq. [California ancillary probate administration]; 20 Pa. C.S. §§ 3136, 4101 [Pennsylvania ancillary probate administration].)  "One of the dominant purposes of an ancillary administration is the collection and conservation of a decedent's domestic assets for the benefit of local creditors."  (*Estate of Glassford* (1952) 114 Cal.App.2d 181, 189.)  As such, to the extent required, any action to directly affect the Pennsylvania property's title may be pursued through ancillary proceedings in that state.

---

[4]      We express no opinion as to the merits of appellant's petitions.

## DISPOSITION

The orders dismissing appellant's petitions are reversed.  The matter is remanded to the probate court for further proceedings.  The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.


We concur:


MORI, J.


TAMZARIAN, J.

8