(67 App. Div. 1.)

FARMERS' LOAN & TRUST CO. v. FERRIS et al.

(Supreme Court, Appellate Division, First Department. December 6, 1901.)

1. WILLS—TRUSTEE—CONSTRUCTION OF WILL—JURISDICTION.
    Where a testator was a resident of South Carolina, and his will probated there, but the trustee under the will is a corporation of the state of New York, and the trust fund and its administration within such state, a court thereof, having obtained jurisdiction of all interested parties, may exercise such jurisdiction in directing how the fund shall be distributed; and the decree, when complied with by the trustee, will relieve it from further liability.

2. SAME—CONSTRUCTION—CONTINGENT LEGACY.
    Testator's will gave a legacy to certain persons in case of the death of his sons and grandson without issue. Such person survived the testator, but died before the sons and grandson, who died without issue. *Held,* that on the death of the testator a contingent estate vested in the legatees, to which their administrators were entitled on the death of the sons and grandson.

3. SAME—CONSTRUCTION—CHARITABLE BEQUEST.
    Testator's will gave a sum in trust for the erection and endowment of an art school and ladies' library, and empowered the trustees to provide as they saw fit and practicable for the future regulation and perpetuation of the same, and that, should any arrangement be made during his lifetime whereby a building should be erected by a certain art union on a certain lot, the trust fund should be transferred to the union for its future use, and application for the purposes aforesaid. A codicil named new trustees,—some having died,—and provided that the foregoing provision of the will should be struck out; and testator gave the fund in trust for the erection or purchase of a suitable hall for the exhibition of paintings, and for necessary rooms for students of the fine arts, and called on his fellow citizens to contribute further money to carry out the plan. *Held,* that a contention that the codicil rendered the bequest void, as uncertain, in that it indicated an intention that the entire fund should be used for the erection of a building, was not meritorious; the codicil not having annulled the entire provision of the will, but merely having been designed to name new trustees, and annul that portion relative to the art union.

4. SAME—CHARITABLE USE.
    Though the codicil should be construed as annulling the entire provision of the will, discretion was vested by the codicil in the trustees not only to purchase or construct, but to suitably equip, a hall for the purposes therein specified, which would constitute a charitable use.

5. SAME—STATUTE.
    The will provided that its validity should be determined by the laws
    of the state of South Carolina as existing at the time of the testator's
    death, and the building provided for was to be erected in a city of that
    state; and it was contended that the bequest was void as in contraven-
    tion of that provision of the constitution of South Carolina adopted in
    1895 which declares that separate schools shall be provided for the
    children of the white and colored races, and that no child of one race
    shall be permitted to attend a school provided for children of the other
    race. *Held*, that while it might be that, if the bequest was in contra-
    vention of the constitution, the fund should not be delivered to the
    trustees, the bequest was valid; it not appearing that the constitution
    referred to private schools, or that it was the intention of the testator
    to establish a school.

6. SAME—CONSTRUCTION—REMAINDER—LIFE ESTATE—DETERMINATION AS TO
    REMAINDER.
    Where a testator's will provided that a third of the residue should,
    on a certain contingency, be divided among the issue of E., and provided
    that, if E. were living when the contingency should take effect, the
    income should be paid to her during her life, and there was no further
    direction as to the disposition of the principal after her death, in a
    suit for a construction of the will, it appearing that E. was 55 years
    of age and without issue, it was proper for the court to pass on the
    proper distribution of the residue on her death.

7. SAME—CONSTRUCTION.
    After the expiration of the particular estate of E. on her death without
    issue, the residue reverts to those who were next of kin of testator
    as of the time of his death.

Appeal from special term, New York county.

Suit by the Farmers' Loan & Trust Company, for the construction of the will of James S. Gibbes, Sr., against Richard B. Ferris and others, as executors of the will, and others. From the decree, defendant John R. Abney and others appeal separately. Modified.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

John R. Abney, for appellant Amelia J. Emanuel.

M. Cleiland Milnor, for appellant Henry S. Holmes as executor for James S. Gibbes, Jr.

John J. Crawford, for appellant Henry S. Holmes as administrator for James Gibbes Haile.

James P. R. Bryan, for appellants Chas. H. Gibbes and Arthur B. M. Gibbes.

Chas. Stewart Davison, for appellants James S. Wilson and Henry S. Holmes as trustee of said Wilson.

Antonio Knauth, for respondents H. Stuart Gibbes and James L. Suydam as guardian ad litem of Thomas M. Gibbes and Virginia P. Gibbes.

Herbert B. Turner, for respondent Farmers' Loan & Trust Co. as trustee, etc.

William D. Guthrie, for respondents Chas. H. Simonton and J. Adgar Smythe as trustees for the city of Charleston, S. C.

LAUGHLIN, J. This action was commenced on the 27th day of May, 1899, by the Farmers' Loan & Trust Company, for a judicial settlement of its accounts as trustee under the will of James

S. Gibbes, Sr., and to obtain a construction of certain provisions of the will. The testator was a resident of Charleston, S. C., and died in that city on the 26th day of April, 1888. His will, with codicils annexed, was duly admitted to probate by the probate court of the county of Charleston on the 1st day of May, 1888. At the time of making the will the testator had a wife, two sons, James S. and George E., and a grandson, James Gibbes Haile. The testator left, him surviving, his widow and his son James S. and said grandson, as his only heirs at law and next of kin; the son George E. having previously died. The widow died on the 2d day of May, 1888. The entire estate was of the value of about $600,000. By the seventh section of the will the executors were directed to forthwith transfer and deliver unto the plaintiff, as trustee, securities amounting at their face value to the sum of $100,000, in trust, to pay the income thereof to the testator's son James S. during his life. The eighth and ninth sections respectively contained similar directions with reference to the delivery of a like amount to plaintiff, as trustee, to pay the income of $100,000 to testator's son George E. during his life, and of another $100,000 to testator's said grandson. Upon the death of either of the sons or grandson, leaving issue, him surviving, such issue was to take the $100,000 principal. Upon the death of one of these three specified descendants of the testator without issue, the survivors were to take in equal shares the income of the fund set apart for his benefit, and upon the death of two the survivor was to take the entire income. In the event of the death of any of them without issue, the principal, of which he received the income, was to go to the issue of the survivors per stirpes, in equal shares; but, in case of the death of the sons and grandson of the testator without issue, the entire principal fund, of $300,000, was to be held by the plaintiff, and applied as provided in the twenty-ninth section of the will. After making certain bequests, and leaving part of his estate in trust for the benefit of his wife, the testator provided in the twenty-third section of his will that the executors should transfer and deliver the rest, residue, and remainder of his estate to the plaintiff, as trustee, to hold and pay the income thereof to each of his said children and grandchild during their lives, respectively, and the income and principal thereof to be held in all other respects subject to the uses, trusts, purposes, and limitations prescribed in said seventh, eighth, and ninth clauses of the will, respectively. The testator's surviving son and grandson both died without issue prior to the commencement of this action. We must therefore look to the twenty-ninth clause of the will to ascertain who are entitled to share in this residue of the estate, as that is the question presented.

At the outset the jurisdiction of the courts of this state over the subject-matter of the litigation is challenged. It appears that all the parties have been personally served or have voluntarily appeared, and the appellant Amelia J. Emanuel is the only one who raises the jurisdictional question. She has appeared generally and answered. Her interest is as a beneficiary for life of one-third of the income of the residue, after the payment of certain legacies. As already

stated, the trustee is a domestic corporation, and the fund is within this state. The trustee received the fund by virtue of the will of the testator, although it was delivered under an order of the court made in an action brought by the executors in South Carolina for instructions with reference to their turning the funds over to plaintiff as directed in the will. The order was in accordance with the clause of the will, and contained no additional condition. The courts of South Carolina cannot obtain jurisdiction over the plaintiff except by its voluntary appearance. The trust fund and its administration being here, the trustee being a corporation of this state, and the court having obtained jurisdiction of the parties, it may properly exercise jurisdiction, and direct how the fund shall be distributed; and its decree, when complied with by the plaintiff, will relieve it from further liability. Cross v. Trust Co., 131 N. Y. 330, 30 N. E. 125, 15 L. R. A. 606, 27 Am. St. Rep. 597.

The first, second, fifth, and sixth subdivisions of section 29 of the will provided for the payment from said residue of certain legacies which have been paid, and are not in controversy. The third subdivision directed that $5,000 of said residue should go to Dr. Henry P. Gibbes, a son of testator's uncle Reeves Gibbes; and the fourth, that $50,000 should go to John Haile, testator's son-in-law.

The first question relating to the construction of the will arises concerning these legacies. These legatees survived the testator, but died before the happening of the contingency upon which they were to take under the twenty-ninth section of the will. It is contended that these legacies, therefore, lapsed; but the administrators of the legatees are parties to the action, and their claim is that the legatees took a contingent legacy upon the death of the testator, which passed to them on the death of the legatees. It will be observed that neither at the time of the death of the testator, nor at any time since, was there any one in being, as the issue of his children or his grandson, in whom this estate vested under either the seventh, eighth, ninth, or twenty-third sections of the will. We are therefore of opinion that the learned trial justice was right in holding that upon the death of the testator a contingent estate vested in the legatees, and, inasmuch as no issue was born to either of testator's sons or his grandson, it never became devested. Clark v. Cammann, 160 N. Y. 315, 54 N. E. 709.

The second question of construction presented by the trustee is as to the validity of the seventh subdivision of the twenty-ninth section of the will, as subsequently modified or superseded by section 4 of a codicil duly made on the 12th day of May, 1885. This seventh subdivision is as follows:

"To Charles O. Witte, Henry A. M. Smith, and such person as may at the time be mayor of the city of Charleston, seventy-five thousand dollars, to have and to hold the same in trust for the erection and endowment of an art gallery and ladies' library in Charleston; and I empower said trustees to provide as they see fit and practicable for the future regulation and perpetuation of the same. Should any arrangement be hereafter made during my lifetime whereby a building shall be erected on the lot on the northeast corner of Meeting and George streets by the Art Union Association for its purposes, then I direct the said seventy-five thousand dollars to be by said

trustees transferred to said association, under such agreement for its future use and application for the purposes aforesaid as shall be sufficient and suitable."

The fourth subdivision of the codicil is in the following language:

"I strike out and annul subdivision seven of section twenty-nine of my said will, with relation to the Art Union, and direct in lieu thereof as follows, viz., in the event of the happening of the contingency referred to in said section, to wit: That there should be no descendant of mine, within the period limited by law, to take my property, then I give and bequeath the sum of one hundred thousand dollars to the mayor of the city of Charleston, at the happening of such contingency, and his successors in office, and Gabriel E. Manigault, Charles E. Simonton, and F. W. Dawson, to have and to hold the same in trust for the erection or purchase of a suitable building to be used as a hall or halls for the exhibition of paintings, and for necessary rooms for students in the fine arts, a ladies' library, and it might also be amalgamated with a musical hall for a conservatory of music. I think, with economical alterations, the present Mills House may be bought and altered to suit. I call on my fellow citizens to contribute fifty thousand dollars more to carry out my plan to cultivate and 'aid in educating the young of our beloved city in painting and music."

It is contended by some of the appellants that this bequest is void for uncertainty, and that it is imperfect and ineffectual under the laws of South Carolina, which, by an express provision of the will, govern. It is claimed that in the seventh clause the trustees were invested with discretion to provide for the future regulation and perpetuation of the trust, as well as to provide for the erection of the art gallery and ladies' library, and that significance should be attached to the phraseology of the fourth clause of the codicil, giving the increased fund "in trust for erection or purchase of a suitable building to be used as a hall or halls for the exhibition of paintings, and for necessary rooms for students in the fine arts, a ladies' library, and might also be amalgamated with a musical hall for a conservatory of music." It is claimed that this provision, construed in connection with the other clauses by which the testator calls on his fellow citizens to contribute $50,000 more to carry out his plan to cultivate and aid in educating the young of his native city, indicates an intention on his part that the entire fund should be used for the erection or purchase of a suitable building. We do not think that the will and codicil should be so construed. It should be observed that the testator does not by the fourth clause of the codicil annul the entire seventh subdivision of the will. He merely strikes out and annuls that part thereof relating to the Art Union, and makes a direction in lieu thereof. By turning to the seventh subdivision, it will be seen that he first specifically gave to the trustees there named $75,000 "to have and to hold the same in trust for the erection and endowment of an art gallery and ladies' library," and empowered the trustees "to provide as they see fit and practicable for the future regulation and perpetuation of the same." Then follows the reference to the Art Union, and he authorizes the trustees to deliver the trust fund to that union, provided an arrangement should be made during his lifetime whereby a building should be erected by the Art Union on the lot therein specified. The purpose of the fourth clause of the codicil was to annul the provision relating to the Art Union.

to make a different designation as to trustees on account of deaths intervening, and to increase the fund. It is not a strained construction to hold that the provision of the seventh subdivision of section 29, expressly conferring discretion upon the trustees to use part of the funds for the future regulation and perpetuation of the trust, is still of force, and that the fourth clause of the codicil should be read in connection therewith. In this view, there can be no question as to the validity of the bequest. If the fourth clause of the codicil should be construed, however, as annulling all of the provisions of the seventh subdivision of section 29, then we think a discretion was vested in the trustees to not only purchase or construct, but to suitably equip, a hall for the purposes therein specified, to effectuate the intent of the testator. This would constitute a charitable use, within the authorities in this state, and within the doctrine of the courts of South Carolina as well. The rule is that such bequests are sustained by courts of equity. In Dye v. Beaver Creek Church, 48 S. C. 444, 26 S. E. 717, 59 Am. St. Rep. 724, where a bequest to the Beaver Creek Church for poor children, for their tuition, was sustained, the court states the rules of law by which the validity of such bequests are to be determined as follows:

"First. If a trustee is appointed by the testator, and the will shows that the object of the devise, though expressed in general terms, is for a charitable use, the trust will be declared valid. In such a case the duty devolves upon the trustee of devising a scheme for carrying the trust into effect. Second. If a trustee is not appointed by the testator, and the will does not declare the manner in which the devise is to be made effectual, equity will not administer the trust. The reason a trustee is allowed to enforce a trust, the object of which is only expressed in general terms, is that in exercising his discretion he carries out the intention of the testator. But, when there is no trustee appointed to exercise this discretion in devising a scheme for the execution of the trust, the court of equity can look alone to the will, and, if it does not show the intention of the testator, parol testimony is inadmissible, and the trust must fall."

It is also claimed that this bequest is void as being in contravention of that provision of the constitution of South Carolina, adopted in 1895, which provides that "separate schools shall be provided for children of the white and colored races, and no children shall ever be permitted to attend a school provided for children of the other race." Article 11, �section 7. The bequest in question vested prior to the adoption of that provision of the constitution, and by the express terms of the will its validity was to be determined by the law of South Carolina as it existed at the time of the testator's death. It might well be, however, since the custody of the fund has not passed to the trustees, that if the purpose of the bequest was clearly in contravention of the constitution, though subsequently adopted, the fund should not be delivered to the trustees; but it is not clear that the constitutional provision quoted relates to private schools, and, if it does, it by no means follows that the purpose of the bequest cannot be carried out. We fail to find that any school, within the ordinary acceptation of that term, is provided for, or required to be established by the trustees. The trustees are directed to provide facilities for art students, but they are not required to provide teachers. It is entirely consistent with the intention of the testator, as gleaned from

the provisions of his will and codicil, that no school was to be established and no teachers were to be employed, but that accommodations and facilities were to be provided for those interested in the study of literature and art to visit the art gallery and library, and conduct their studies individually and without the instrumentality of what is understood to be a school. Our conclusion, therefore, is that it has not been shown that the trust may not be executed without infringing upon the constitution and public policy of South Carolina.

The third question of construction relates to the eighth and last subdivisions of section 29, which provides for the distribution of the residue of the fund as follows:

"One equal third part shall go and be divided equally among the issue of my niece Mrs. Josephine Emanuel per stirpes: provided that, if she be living when the contingency on which this section may take effect shall occur, then and in that case the entire income thereof shall be paid to her during her natural life, freed from the debts or control of any husband, and no division thereof among her issue shall be had until her death. The other two-thirds of said residue shall go to, and be divided equally among, the children and grandchildren of my brother Allen S. Gibbes, per stirpes."

Mrs. Emanuel is still living. She is now 55 years of age, and has never had issue. The trustee desires a decree of the court with reference to the disposition of the residue of which she is entitled to the income during her life. Objection is raised to the court's determining that question prior to her death. If that were the only purpose of the suit, the objection would be well founded; but, the court having necessarily acquired jurisdiction at this time for the purpose of deciding other questions, there is no impropriety in passing upon this question, also, especially in view of the extreme improbability that Mrs. Emanuel will leave issue. It is contended on the one hand that upon her death without issue this residue should be distributed as in the case of intestacy of the testator, and hence would go to those who stood in the relation of his next of kin to the testator at the time of his death, and, on the other hand, that the entire title vested in the trustees, and that by operation of law a trust will result upon the death of Mrs. Emanuel in favor of the next of kin of the testator in being at the time of her death. The case of Blount v. Walker, 31 S. C. 13, 9 S. E. 804, is relied upon as authority for this last contention. That case related to real estate, and the devise was to a trustee "and his heirs," to hold for the sole and separate use of the testator's daughter during her life, with power to the trustee to sell upon the written request of the beneficiary if he should deem it expedient, and either reinvest the proceeds, or turn the same over to her "for her sole, separate, and absolute use, freed and discharged of all trusts." Upon the death of the testator's daughter the will devised the property remaining to her issue, and provided that if she died without issue she might appoint by will who should take the same. The daughter died without issue, and without exercising the power of appointment as therein provided. It was held that inasmuch as the trustee could not accomplish the purpose of the testator by making a sale, and turn over the proceeds to the beneficiary, if he took a less estate than a fee, thereafter the entire fee passed to

him, and that upon the death of the testator's daughter a trust resulted in favor of those who were at that time testator's heirs. That case is not necessarily decisive of the question under consideration, and it will doubtless be limited to its own peculiar facts. Here the legal estate passed to the trustee, but that did not prevent the reversion remaining in the testator's next of kin at the time of his death, subject to being displaced upon the coming into being of any person authorized to take under the will. At no time was there any one in being in whom the residue vested under the will, and we are therefore of opinion that the residue after the expiration of the particular estate of Mrs. Emanuel, and upon her death without issue, will revert to those who answer to the description of the next of kin of the testator, to be ascertained as of the time of his death. Clark v. Cammann, 160 N. Y. 315, 54 N. E. 709. If, therefore, Mrs. Emanuel shall die without issue, this residue will become intestate property, and will vest immediately in those who were such next of kin at the time of the death of the testator. On this question the learned trial justice held otherwise, but in all other respects the decision is in accordance with our views.

The facts being undisputed, the third conclusion of law should be modified so as to provide that the next of kin of the testator at the time of his death will take the principal of one-third of the residue of the estate held in trust for Mrs. Emanuel upon her death without issue, and as so modified affirmed, with separate bills of costs to all the parties appearing separately, to be paid out of the funds. All concur; INGRAHAM, J., in result.

---

(67 App. Div. 12.)

RATTLE v. MUTUAL LIFE INS. CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 13, 1901.)

2. SAME—APPLICATION—ESTOPPEL.
    The denial of an application of a defendant for a preference on the calendar, as provided by Code Civ. Proc. § 791, subd. 5, does not estop a defendant thereafter impleaded from applying for the same.

Appeal from special term, New York county.