IRVING I. ERDHEIM and ROBERT F. ARMSTRONG, Plaintiff and Judgment-Creditor-Respondent, *v.* ELIZABETH K. MABEE, Judgment Debtor. CITY BANK FARMERS TRUST COMPANY, as Cotrustee under the Will of THOMAS J. RYAN, Deceased, Third-Party Appellant, et al., Third Party.

Argued April 7, 1953; decided May 28, 1953.

*Benjamin Nassau* and *Charles Angulo* for third-party appellant. I. The situs of the trust is in the District of Columbia. (*Graybar Elec. Co.* v. *New Amsterdam Cas. Co.,* 292 N. Y. 246.) II. Exclusive jurisdiction to levy garnishee execution against trust income is vested in the State of the situs of the trust. (*Commercial Credit Corp.* v. *Young,* 258 App. Div. 323; *Salm* v. *Krieg,* 182 Misc. 721; *Jenkins* v. *Lester,* 131 Mass. 355; *Everhart* v. *Provident Life & Trust Co.,* 118 Misc. 852; *Taylor* v. *Taylor,* 112 N. Y. S. 2d 590.) III. In addition to jurisdiction over the *res,* section 684 of the Civil Practice Act requires jurisdiction over the person or persons against whom the garnishment process is directed. (*Starke* v. *Beckwith Special Agency,* 227 N. Y. 42; *Brennan* v. *Willson,* 71 N. Y. 502.) IV. The public policy of the State of New York requires reversal of the order below. V. Lack of jurisdiction renders the order below void under the due process clause of the Constitution. (*Scott* v. *McNeal,* 154 U. S. 34.)

*John A. Hoyt, Jr.,* for plaintiff and judgment-creditor-respondent. I. Review is not required or justified in the interest of substantial justice. (*Metropolitan Trust Co. of N. Y.* v. *Bishop,* 237 N. Y. 607; *Delaney* v. *Brett,* 51 N. Y. 78; *Purdy* v. *Erie R. R. Co.,* 162 N. Y. 42, 185 U. S. 148; Hughes on Federal Practice, §§ 3220, 3224.) II. It is the public policy of the State to assist resident judgment creditors in levying and collecting under their judgments. (*Commercial Credit Corp.* v. *Young,* 258 App. Div. 323; *Shackman* v. *Osborne,* 257 App. Div. 1037; *Carpenter* v. *Farabaugh,* 146 Misc. 625; *State Tax Comm.* v. *Bradley,* 185 Misc. 733.) III. Situs of the Ryan testamentary trust and its administration are governed by the laws of New York. (*Bishop* v. *Bishop,* 257 N. Y. 40; *Hutchison* v. *Ross,* 262 N. Y. 381; *Cross* v. *United States Trust Co. of N. Y.,* 131 N. Y. 330; *Farmers Loan & Trust Co.* v. *Ferris,* 67 App. Div. 1; *Keeney* v. *Morse,* 71 App. Div. 104; *City Bank Farmers Trust Co.* v. *Meyn,* 263 App. Div. 671; *Matter of McAuliffe,* 167 Misc. 783; *Matter of Freed,* 71 N. Y. S. 2d 304; *Matter of Matthiessen,* 195 Misc. 598; *Holmes* v. *Camp,* 219 N. Y. 359; *Helme* v. *Buckelew,* 229 N. Y. 363; *Squier* v. *Houghton,* 131 Misc. 129; *Toronto Gen. Trust Co.* v. *Chicago, B. & Q. R. R. Co.,* 123 N. Y. 37.) IV. The trustees have full access to the courts of this State. V. Designated executors in the Ryan estate previously submitted to and used the Surrogate's Court of New York County. (*Matter of Fitch,* 160 N. Y. 87; *Smith* v. *Second Nat. Bank,* 169 N. Y. 467; *Matter of Grivel,* 199 Cal. 351; *Matter of Healey,* 134 A. 684 [N. J.].) VI. Documentary evidence outside the record regarding prior estate proceedings in New York may be received on appeal. (*Dunham* v. *Townshend,* 118 N. Y. 281; *Latourelle* v. *New York Central R. R. Co.,* 275 App. Div. 123.) VII. District of Columbia courts do not have exclusive jurisdiction of the subject trust. (*Smithson* v. *Callahan,* 141 F. 2d 13.) VIII. Presentation under the garnishment statute (Civ. Prac. Act, § 684) is not a process but is only notice of the issuance of execution. (*Smith* v. *Endicott-Johnson Corp.,* 199 App. Div. 194; *Farwell* v. *Smith,* 29 Mass. 83; *Alabama & F. R. Co.* v. *Rowley,* 9 Fla. 508.)

CONWAY, J. In December, 1950, a firm of attorneys, both members of which are New York residents, recovered a judgment in Supreme Court, Bronx County, against Elizabeth K.

Mabee. The judgment was for professional services rendered to Mrs. Mabee who appears to have been a resident here at the time of the action since it is so stated in respondent's brief and there is no claim by appellant trust company that she was not or that she has since changed her residence. Execution has been returned unsatisfied and no part of the judgment has been paid.

On August 31, 1951, the plaintiff-judgment-creditor instituted this garnishment proceeding pursuant to section 684 of the Civil Practice Act to reach income payable to the judgment debtor from a trust created by the will of Thomas J. Ryan, deceased. The decedent died a resident of the District of Columbia in December, 1927. He bequeathed his residuary estate in trust to pay one half of the net income thereof to his sister Anne Belle Ryan (now deceased) during her life, and one half of such net income to the judgment debtor herein, Elizabeth K. Mabee (named in the will as Elizabeth O'Connor McCarthy). After the death of the respective beneficiaries, the net income of the trust is payable in perpetuity to St. Clara College of Sinsinawa, Wisconsin, a religious educational institution.

On January 13, 1928, the trust company obtained temporary letters of administration from the Surrogate's Court, New York County. The executive officer of St. Clara College, Ellen Coughlin, consented to the appointment.

Thereafter, in February, 1928, the will was admitted to probate in the Supreme Court of the District of Columbia holding Probate Court. The trust company and Ellen Coughlin, executive officer of St. Clara College, qualified and were appointed as executors.

On July 20, 1928, the trust company alone was granted ancillary letters testamentary from the Surrogate's Court, New York County.

On December 23, 1929, the final account of the executors was passed upon and approved by the District of Columbia court. That account " shows distribution of the estate according to law and to the will, one-half unto M. Genevieve Ryan and one-half to the testamentary trustees under the will for the benefit of Anne Belle Ryan and Elizabeth O'Connor McCarthy for life."

The property comprising the trust fund is now on deposit at the head office of the trust company in New York City.

In October, 1931, the trust company, and Ellen Coughlin, as cotrustee, brought a proceeding in the Supreme Court of the District of Columbia (as it was then named) for the settlement of their first account as trustees and for a construction of the will. On December 3, 1931, a decree was entered settling the account and construing the will with reference to their investment powers. The decree also contained the following provision: "That jurisdiction of this cause be and it is hereby retained for such further orders and instructions *regarding the administration* of the trust estate as may be deemed necessary." (Italics supplied.)

Under date of November 17, 1952, counsel for the plaintiff wrote to the Clerk of the United States District Court for the District of Columbia inquiring as to whether the records of his court:

"1. * * * indicate that the Farmers Loan & Trust Company of New York (now known as City Bank Farmers Trust Company) and Ellen Coughlin, Executive Officer of St. Clara College, both designated as Trustees under decedent's will, consented to act as Trustees in connection with the above estate, and whether or not they qualified as Trustees and in so consenting and qualifying, did they constitute and appoint the Clerk of your Court as their lawful attorney to accept service in regard to subject estate?

"2. * * * indicate that Katherine Murphy, the present Executive Officer of St. Clara College (succeeding Ellen Coughlin on or about 29 July, 1949), has consented to act as Trustee in the above estate and whether or not she qualified as Trustee, and in so consenting and qualifying did she constitute and appoint the Clerk of your Court as her lawful attorney to accept service in regard to subject estate?

"3. * * * indicate a resignation of said Ellen Coughlin as a Trustee of subject estate on or after 29 July, 1949 when she ceased being Executive Officer of St. Clara College?"

The clerk answered stating that: "The last action in the case was a decree instructing Trustees entered December 3, 1931" (quoted above in part), and that: "No consents of trustees to serve have been filed in the cause, and the Court not having appointed the trustees no power of attorney designating the

Clerk of this Court as a process agent for trustees has been filed."

The application for the order of garnishment involved on the present appeal was made by the plaintiff-judgment-creditor by affidavit and order to show cause returnable at Special Term in September, 1951. The order was directed to the trust company and the executive officer of St. Clara College as trustees. It, and the affidavit upon which it was granted, was served personally within the State upon the trust company and, as conceded by the trust officer of the trust company, upon the executive officer of St. Clara College outside the State, by registered mail, in accordance with the terms of the order to show cause.

The motion was granted and the Appellate Division affirmed but granted leave to appeal certifying five questions of law to us.

The major issue to be determined is whether the courts of the State of New York have *jurisdiction* to garnishee the income or profits due or to become due from trust funds admittedly located here.

The trust company contends that the situs of this trust is in the District of Columbia and that *exclusive jurisdiction* to garnishee the income of a trust is vested in the courts of the State of the situs of the trust whether or not there are trust funds there.

The situs of a trust is " determined by an interpretation of the words by which the trust is created. No rule of law can be laid down for the purpose of interpretation. * * * [A] 11 indications are considered, such as the intention of the parties, the place of business or domicil of the trustee, the location of the trust *res,* and other similar matters." (2 Beale on Conflict of Laws, p. 1024.) " In the case of a testamentary trust, the seat of the trust is usually the domicil of the testator, where the will takes effect, unless a contrary intention appears, *as by naming a foreign trust company as trustee."* (*id.*) (Italics supplied.) In section 298 of the Restatement of Conflict of Laws it is said: " A testamentary trust of movables is administered by the trustee according to the law of the state of the testator's domicil at the time of his death unless the will

shows an intention that the trust should be administered in another state." Comment c of that section reads: "If the testator appoints as trustee *a trust company of another state,* presumptively his intention is that the trust should be administered in the latter state; the trust will, therefore, be administered according to the law of the latter state." (Italics supplied.)

According to the above tests the situs of this trust is not the testator's domicile, the District of Columbia, but New York for: (1) the testator appointed as trustee a New York trust company which had no office or place of business at the testator's domicile, undoubtedly realizing that such trustee would assume the active role in administering the estate and keep the *res* here, especially since the other trustee was to be whatever religious was the executive officer of a college in Wisconsin, (2) the will authorized the executors to invest the proceeds of all property sold " in United States Government bonds or other corporation bonds but only such bonds as are permissible under the law of New York State for saving banks within the State of New York to invest their deposits in ", and (3) the will provided that the amount of commissions to be paid to the trust company alone both as executor and trustee be determined in accordance with the laws of New York. There was no provision for payment of such commissions to the executive officer of St. Clara College. In addition it was made a condition for the exercise of " authority, discretion or power " by " an executor or trustee " that there be qualification as such.

Assuming, however, that the District of Columbia by retaining control of the *administration* of the trust, has determined that its situs is there and that full faith and credit must be accorded that determination, it does not necessarily follow that we are powerless to apply the income from a trust *res,* which is physically present in our State, to the payment of judgments of resident judgment creditors. The courts of this State are not wholly without power to protect a resident creditor at least so far as the relief to be secured relates to property within the jurisdiction of the court and unquestionably belonging to the judgment debtor. (*Helme* v. *Buckelew,* 229 N. Y. 363, 368; *Bergmann* v. *Lord,* 194 N. Y. 70, 78.) We may assume that prior

to its decree in which it announced a retention of jurisdiction over the *administration* of the trust, the District of Columbia court passed upon the validity, construction and effect of testator's will and of the trustees' accounting, but it is clear that none of those determinations has any relation to a statutory garnishment proceeding in this State affecting money belonging to the judgment debtor in the possession of the trust company here as a *result* of the administration of the trust under the supervision of the District of Columbia court. As was well said in *Keeney* v. *Morse* (71 App. Div. 104, 107): "By its terms, the income is to be paid to the defendant [beneficiary], and the appropriation of such income to a judgment creditor of the beneficiary would be a violation of the terms of the trust, and not an enforcement of it. Whether or not there shall be such an appropriation must depend upon the laws of the State in which the application to reach the fund, situated as this is, is made; and the question is whether the income of the trust property situated here is applicable to the payment of a judgment against the person to whom the income is payable." In Beale on Conflict of Laws (Vol. 1, p. 454), it is written: "The jurisdiction for garnishment of tangible property is obviously based upon the possession by the garnishee of property belonging to the defendant, which can be reached by the court because it is situated within the territory of the court."

The stated rule as to jurisdiction for garnishment purposes is a sound one and finds support in the following language of the United States Supreme Court in *Pennoyer* v. *Neff* (95 U. S. 714, 723): "So the State, through its tribunals, may subject property situated within its limits owned by non-residents to the payment of the demand of its own citizens against them; and the exercise of this jurisdiction in no respect infringes upon the sovereignty of the State where the owners are domiciled. Every State owes protection to its own citizens; and, when non-residents deal with them, it is a legitimate and just exercise of authority to hold and appropriate any property owned by such non-residents to satisfy the claims of its citizens."

And, in *Hutchison* v. *Ross* (262 N. Y. 381) we said at page 388 (per LEHMAN, J.): "The courts of each jurisdiction determine all judicial questions by the law of that jurisdiction. When the

owner of personal property authorizes its removal from his domicile or acquires property elsewhere, he must be deemed to know that his property comes under the protection of, and subject to the laws of the jurisdiction to which it has been removed, and that appeal may be made to the courts of that jurisdiction for the determination of conflicting rights in such property.''

The remaining question is whether the requirements of the New York garnishee statute (Civ. Prac. Act, § 684) have been met. That section provides in part: '' 1. Where a judgment has been recovered and * * * returned * * * unsatisfied, and * * * income from trust funds ° * * are due and owing to the judgment debtor or shall thereafter become due and owing to him * * * the judgment creditor may apply to the court in which said judgment was recovered * * * *without notice to the judgment debtor,* and upon satisfactory proofs * ° * the court * * * must grant an order directing that an execution issue against the * * * income from trust funds * * * of said judgment debtor * * * and on presentation of such execution by the officer to whom delivered for collection to the person or persons from whom such * * * income from trust funds * * * are due * * * said execution shall become a lien and a continuing levy upon the * * * trust funds * * * due or to become due to said judgment debtor * * *.'' (Italics supplied.)

The order entered at Special Term provides that the execution: '' * * * when presented by the Sheriff to the said The City Bank Farmers Trust Company and the Executive Officer of St. Clara College, as Trustees under the Last Will and Testament of Thomas J. Ryan, deceased, shall become a lien and a continuing levy upon the income from trust funds or profits, due or to become due to the said judgment debtor from the said The City Bank Farmers Trust Company and the Executive Officer of St. Clara College, as Trustees under the Last Will and Testament of Thomas J. Ryan, deceased * * *.''

The majority of the Appellate Division interpreted the order of Special Term to mean that personal service of the execution would be made on the trust company in New York and actual

notice would be given to the nonresident alleged trustee. That was held to be a sufficient presentment under the statute.

The trust company's argument is that the trust property can be disposed of only by the concurrent action of both trustees, hence, personal service on both trustees is required in a garnishment proceeding.

Reliance is placed upon *Starke* v. *Beckwith Special Agency* (227 N. Y. 42, 43-44) in which we said: "To fix his [garnishee's] liability the execution must be presented. And ' presentation ' implies some formality [cases cited] * * *. Personal service of the execution is clearly contemplated."

Here, Ellen Coughlin was succeeded by Katherine Murphy as the executive officer of St. Clara College in July, 1949. Katherine Murphy (known in religion as Mother Mary Evelyn Murphy) has not been appointed as successor trustee by the District of Columbia court. She has not designated the clerk of that court as an agent upon whom process may be served in a proceeding brought against her. She has not given the District of Columbia court jurisdiction over her by applying to that court for instructions or in any other manner in connection with the administration of the trust. She (or her predecessor) has waived commissions and permits the trust company to pay out the money of the trust estate on its sole check and to make tax returns and pay the tax. She has not met the condition of the will that: " Any authority, discretion or power conferred upon my executors and/or Trustees by this Will may be exercised by such of them *as shall qualify,* and by the survivor of them." (Italics supplied.)

Thus, there is no evidence in this record to indicate that Katherine Murphy ever qualified as a successor trustee under the terms of the will as a condition of her authority to act and we are compelled to conclude that she is not a trustee and that personal service upon the trust company, without more, is a sufficient presentment under the statute.

If Katherine Murphy were a trustee, as is claimed by the trust company, it seems to us that, under the circumstances here presented, personal service upon the trust company and actual notice to her would be a sufficient presentment. The record does not disclose whether or not such presentment has

been made or is to be made after our decision. As indicated (*supra*) it is conceded that service of the order to show cause which initiated this proceeding was served personally upon the trust company and by registered mail with return receipt requested upon the executive officer of St. Clara College and all of the parties have been content to proceed upon that basis.

A garnishee is usually one who is a stakeholder who finds himself suddenly in the midst of a controversy in which he has no interest but who may be subjected to suit at the hands of either the judgment creditor or judgment debtor if he pay the money over to the wrong party. To fix the trustee's liability, section 684 of the Civil Practice Act provides that the execution must be presented to him. However, that section is a remedial statute in that it pertains to and affects a remedy as distinguished from a right. As such it should not be construed with such strictness as to defeat its evident purpose which is to aid and facilitate the collection of debts. The word " presented " has variable meanings depending upon the context in which it is used. Among such meanings are " show " and " exhibit ". (33 Words and Phrases, p. 442 *et seq.*) True, we have said in *Starke* v. *Beckwith Special Agency* (*supra*) that in section 684 of the Civil Practice Act the word " present " means personal service. Nevertheless, to construe the word in such fashion that personal service, in a strict sense of the word, is necessary as to both the trust company and the executive officer of St. Clara College here would be to exalt language over substance and defeat the very purpose of the statute. It has been said : " ' it is not the words of the law, but the internal sense of it that makes the law, and our law (like all others) consists of two parts, viz., of body and soul ; the letter of the law is the body of the law, and the sense and reason of the law is the soul of the law * * *.' " (*Holmes* v. *Carley*, 31 N. Y. 289, 290.) Sense and reason demand that in this case a more liberal construction be given the word " present ". One of our lower courts has held that " presentation " as used in section 684 of the Civil Practice Act means either personal service or service by registered mail with a return receipt requested. (*Triangle Publications* v. *Worth Adv. Agency Co.*, 200 Misc. 671.) We should so regard it on this record as to the pres-

ent executive officer of St. Clara College if we assume that in some way which has not been called to our attention she has become a successor trustee.

The order of the Appellate Division should be affirmed, with costs. The first four questions certified are not answered. The fifth question certified is answered in the affirmative.

DESMOND, J. (dissenting). I vote to reverse.

I realize that there is practical convenience to respondent, and perhaps an appearance of fairness, in allowing these creditors of the trust income beneficiary, to garnishee, in New York, the income which is being paid to her by a New York trust company, one of the trustees, on the securities held by the trust company in New York City. However, the difficulty arising from our affirmance of the garnishee order, is that the New York courts are thereby making directions for payment of income, different from those in the terms of the trust itself, and as to a trust which is presently being administered by a competent court of the District of Columbia. That this trust is still under administration in the United States District Court for the District of Columbia is entirely clear from the language, quoted in Judge CONWAY's opinion, wherein that court specifically retained jurisdiction of the trust for necessary further orders and instructions regarding its administration. After the executors had accounted in that court, the trust fund was turned over to the testamentary trustees to be administered according to the provisions of the will, and the trustees have no right to distribute the income otherwise, except on instructions of that court (see *Everhart* v. *Provident Life & Trust Co.,* 118 Misc. 852, 854, LEHMAN, J., citing *Jenkins* v. *Lester,* 131 Mass. 355). Thus, when they comply with this New York garnishee order, they can be accused of violating the instructions of the District of Columbia court which turned the trust over to them, and which has retained jurisdiction of it. What we are doing, by this affirmance, is subjecting these trustees to two conflicting sets of instructions, by two different courts.

So, it seems to me, it is not of prime importance whether this trust would be considered, for other purposes, as " located " in the District of Columbia, or in New York. But, if we are to decide that question, we must remember that ordinarily, as

to a testamentary trust, it is presumed that the locus is at the place where the will was probated, unless the trust has been turned over to trustees in another State without further control by the court which probated the will. Judge LEHMAN pointed out in the *Everhart* opinion (*supra,* p. 855), as one reason (there was another not here pertinent) why that trust had to be considered as being " legally outside of the state ", that " the instrument creating the trust was probated in a foreign jurisdiction ". It is true, here, that one of the trustees, and the one which has physical possession of the *res,* is in New York, but there is another trustee in Wisconsin, and there is nothing in this record to indicate that the Wisconsin trustee has lost her position as such. There is certainly no showing that the Wisconsin trustee has failed or neglected to take any step, if there be any, required by District of Columbia law, to keep her in her trusteeship. The trust business, to be sure, is being carried on in New York, as to the holding of the securities and the collection and paying out of the income, but trust law requires that the two trustees act jointly, and, presumably the New York trustee communicates with the Wisconsin trustee whose powers are exactly the same as those of the New York bank. The *ministerial* duties of the trust can be and are carried on bv one trustee, but the trusteeship is still *joint.*

This is not a problem of finding the locus of a trust to see what law governs it, but rather of a demand, by a trust beneficiary's creditor, for a direction by a New York court for payment of income contrary to the direction made by the trust itself and by the court which is administering the trust.

LEWIS, DYE and FROESSEL, JJ., concur with CONWAY, J.; DESMOND, J., dissents in opinion in which FULD, J., concurs.

Order affirmed, etc.