## Thatcher Estate (No. 2)

*Lloyd H. Fuge,* for petitioner.

*Joseph I. Lewis,* for respondent.

HAY, J., October 29, 1971.—This case initially came before this court on a petition by a resident cotrustee of a testamentary trust created under a will probated in New Mexico praying that a citation be awarded directed to the other cotrustee, also a resident of Allegheny County, Pa., to show cause why an attorney employed to assist petitioner in the management of the trust estate should not be paid compensation for such services from the assets of the trust.

Respondent filed preliminary objections alleging, first, that this court lacked jurisdiction and, secondly, that the cotrustee did not jointly agree to incur the obligation referred to in the petition.

Our court en banc, in affirming the opinion written by the auditing judge, took the position that we did have jurisdiction to determine the issues raised on the

facts before us and we applied sections 298 and 299 to the Restatement, Conflict of Laws, to those facts before us at that time.

Testator, domiciled in the State of New Mexico, died, bequeathing the trust res to John H. Thatcher and Charles A. Thatcher, cotrustees, both of whom were domiciled in Allegheny County, Pa., and upon the death of the survivor of them to the Colonial Trust Company (now Pittsburgh National Bank), also located in Allegheny County, Pa. The majority of the beneficiaries of the settlor's trust resided in or near Allegheny County, Pa., and the movable items of the trust res (approximately seven-eighths of the entire trust estate) were and are located in Pennsylvania. We then decided, based upon those facts and the aforementioned sections of the Restatement, Conflict of Laws; Cronin's Estate, 326 Pa. 343 (1937); Risher's Will, 277 N.W. 160, 163 (1938); Keeney v. Morse, 71 App. Div. 104, 75 N.Y. Supp. 728 (1902); Bank of New York v. Shillito, 14 N.Y.S. 2d, 458 (1939); and Casey's Est. Montg. County, 134 (1902), and various other cases, that testator showed a definite intention that the trust, as to the movables, should be administered in accordance with the laws of Pennsylvania, that this court had jurisdiction over the movable portion of the trust res located within the Commonwealth and overruled the preliminary objections filed by respondent. From that decision by the court en banc, no appeal was taken: Thatcher Estate, 47 D. & C. 2d 712.

Another petition was filed on August 2, 1971, wherein it was alleged that the bulk of the corpus of the trust (bonds of various types) reposed in the Pleasant Hills Office of the Mellon National Bank and Trust Company, amounting to approximately $350,000; that access to the box in which the said bonds were located was controlled by respondent; that a checking account

of trust funds was maintained at Three Rivers Bank and Trust Company, Large, Pa., under the sole control of respondent; that another checking account of trust funds was presumed to exist, its location being unknown, and that income producing realty was situated in New Mexico, having an approximate value of $75,-000; that the trust has now and has always had its de facto administration in Allegheny County, where the cotrustees reside and are domiciled; that Charles A. Thatcher, a cotrustee of said trust, has retained exclusive possession over or control over all of the assets of the said trust; has prevented petitioner from having any possession of, access to or control of the trust assets, which is contrary to the provisions of the trust; that the trust is being mismanaged; and that the cotrustee has not advised petitioner of any action taken by him in connection with his exclusive handling of the trust. Preliminary objections were again filed to that petition, which objections again raised the question of the jurisdiction of this court. In re-analyzing respondent's position, we have certain facts which are not in dispute.

1. There has been an administration of the trust going on in New Mexico.

2. Part of the trust res, specifically income-producing land worth approximately $75,000, is located in New Mexico.

3. The bulk of the trust res (movables), including approximately $350,000 in bonds and various checking accounts, are located in Allegheny County, Pa.

4. Decedent died domiciled in New Mexico.

5. By his will, decedent appointed the trustees, naming them as being residents of Allegheny County, Pa.

6. The executor of decedent's estate was instructed

to dispose of decedent's real estate in New Mexico, which has not been done.

7. The surviving brother or trustee shall continue as trustee upon the death of the other.

8. After the death of both of the named trustees, the Colonial Trust Company of Pittsburgh, Pa., was appointed successor trustee to wind up the affairs of the trust.

Respondent's position is that this court does not have jurisdiction for the following reasons:

1. That the trustees having elected to give the New Mexico court jurisdiction, either cotrustee acting individually would be estopped from asserting jurisdiction to any forum other than New Mexico.

2. That this court does not have jurisdiction because the trust res contains, in addition to movables, some real estate located in New Mexico, and for that reason section 298 of the Restatement, Conflict of Laws, is applicable.

Neither petitioner nor respondent has supplied us with any new applicable case law on the points raised by respondent insofar as his preliminary objections are concerned. However, based upon additional case law, and Restatement 2d, Conflict of Laws, which we did not have the benefit of at the time of our initial opinion, and in conjunction with the first Restatement, Conflict of Laws, we feel our initial decision was correct and the position of respondent erroneous.

As has been previously pointed out, at the time we wrote our first opinion in this matter, we did not have the benefit of Restatement 2d, Conflict of Laws.

The pertinent section on the question before us is section 267,* entitled "Court Supervision of Adminis-

---

* Section 267 of 2 Restatement 2d, Conflict of Laws, is based upon section 299 of the first Restatement, and supplements and enforces that section upon which we relied in our previous opinion.

tration." Under subparagraph d, entitled "Jurisdiction," the comment in the Restatement 2d reads as follows:

"Even though the trustee has qualified as trustee in a court, *its jurisdiction is not exclusive and the courts of other states may exercise jurisdiction in proper cases if they have jurisdiction over the trustee, or if they have jurisdiction over trust assets insofar as interests in those assets are concerned.*" (Italics supplied.)

The Restatement then goes on to say in subparagraph E, entitled "Exercise of jurisdiction":

"A court of a state other than that of the testator's domicile or that in which the trust is to be administered will not exercise jurisdiction if to do so would be an undue interference with the supervision of the trust by the court which has primary supervision. Whether there is such interference depends on the relief sought. *Thus, if a court acquires jurisdiction over the trustee it may entertain a suit to compel him to redress a breach of trust, even though the trustee has qualified as trustee in a court of another state or the administration of the trust is in another state. It may compel the trustee to render an accounting or it may even remove the trustee.* On the other hand, it will ordinarily decline to deal with questions of construction or validity or administration of the trust, leaving these matters to be dealt with by the court of primary supervision. Thus, it will not ordinarily give instructions to the trustee as to his powers and duties." (Italics supplied.)

The language in Restatement 2d, Conflict of Laws, seems to fit exactly the relief sought by petitioner.

Assuming then for the purposes of argument only that testator did not intend that his trust be administered in Pennsylvania, it seems apparent under Restatement 2d that this court still has power to decide

the question before us, if it has jurisdiction over either the trustees or the trust assets insofar as those assets are concerned.

Hardy v. Hardy, 164 Cal. App. 2d 77 (1958), was a California case wherein defendant husband, John C. Hardy, and his father, defendant Eugene D. Hardy, appealed from a portion of the decree imposing a lien upon an Illinois spendthrift trust to secure payment to plaintiff of certain sums as alimony, child support, court costs and attorney fees. The trust was established by the will of John's deceased mother, naming John as a beneficiary, Eugene as trustee and certain others as contingent beneficiaries. The trust provided that the trustee should pay to John such sums as are reasonably necessary for his care, support and maintenance, and periodic payments of the corpus to John upon his attaining certain designated ages. It also contained the customary clauses relative to payment and transfer of money or property by the trustee only to a beneficiary in person and prohibits any assignment or transfer by a beneficiary of his interest in the trust.

The California Court reached a decision based partly by a decision of our Supreme Court in re Stewart's Estate, 334 Pa. 356, and saw fit to allow attorney fees and the attachment of certain parts of the trust located in Illinois. The important part of that opinion, insofar as we are concerned, is on page 79, where the court stated:

"[1] We are entirely in accord with defendants' first contention that a court of one state cannot directly affect title to land in another. [2] However it is equally true that a court having the parties before it can, in a proper case, through its coercive powers, compel them to act in relation to property not within the territorial jurisdiction of the court. (Fall v. Eastin, 215 U.S. 1 [30 S.Ct. 3, 54 L.Ed.65, 23 L.R.A. N.S. 924];

Taylor v. Taylor, 192 Cal. 71 [218 P. 756, 51 A.L.R. 1074].)"

See also Rogers v. Girard Trust Co., 159 F. 2d 239.

National City Bank of New York v. Beebe, 131 N.Y.S. 2d 67 (1954), is another case supplying us with helpful guidelines. That was an action to settle the account of plaintiff as trustee under the will of decedent, who died a resident of Rhode Island, leaving a last will and testament, which was duly probated in Rhode Island. The National City Bank of New York was appointed as trustee and commenced administration of the trust as a cotrustee with Edith Norman Hunter. Edith Hunter Beebe succeeded Edith Norman Hunter as trustee and at a later date Bradford Norman, Jr., was appointed as trustee. After his death the National City Bank of New York and Edith Hunter Beebe were the surviving trustees. At the time of the appointment of the National City Bank of New York as trustee, all of the personal trust fund was physically situate within the State of New York, where it had been held and administered by the trustees. The proceedings before the court involved a question of a power of appointment under decedent's will and there were various petitions filed to intervene and complaints to dismiss. Insofar as we are concerned, however, the pertinent parts of the opinion are as follows:

"The cross-motion to dismiss for lack of jurisdiction is grounded on the proposition that the situs of the trust is Rhode Island. In support thereof it is alleged that the decedent died a resident of Rhode Island; his will was probated in Rhode Island; the named trustee and the successor trustees, prior to 1927, resided in Rhode Island as did the life beneficiaries and donees of the power to appoint. In addition, it is alleged that property of the decedent, real and personal, was located in Rhode Island at his death, and that at the time

of the appointment of the plaintiff trust company part of the trust res consisted of real property, and that the National City Bank of New York invoked the jurisdiction of the Rhode Island courts in connection with the administration of the trusts.

"By way of summary it is argued that the trust had substantially all of its contacts in Rhode Island prior to January 1927 and has at all times been and still is subject to the supervision of the Rhode Island courts.

"[1] Jurisdiction is either in personam or rests upon the presence of the res in this jurisdiction. In personam jurisdiction in respect of trustees is at times complicated by their dual capacity since they act individually as well as officially. The presence of a trustee within this jurisdiction does not necessarily carry with it his presence in an official capacity. The corporate trustee individually does business within this jurisdiction and, as trustee, has administered the trust res within this jurisdiction wherein are physically located all of the remaining property of the trust. There is also present in personam jurisdiction in respect of the plaintiff, Beebe, in her individual as well as her official capacity, since the acts of the corporate plaintiff as trustee are her acts as trustee by consent, adoption and ratification. Furthermore, the voluntary submission to the jurisdiction of this court on the part of the plaintiffs, individually and as trustees, removes any possible doubt as to personal jurisdiction of them, Leighton v Roper, 300 N.Y. 434, 440, 91 N.E. 2d 876, 879, 18 A.L.R. 2d 537. In addition, Frederick H. Prince, Jr., individually and as executor of Norman Prince, deceased, the executors of the estate of Bradford Norman, Jr., the executor of the estate of Bradford Norman, and Barbara Norman Cook, individually, the defendants seeking dismissal of this action for lack of jurisdiction of subject matter, have appeared and sub-

mitted to the jurisdiction of this court. There are present, therefore, in personam jurisdiction as well as jurisdiction over the trust res, which adequately sustain this court's jurisdiction of this action. Farmers Loan & Trust Co. v Ferris, 67 App. Div. 1, 5, 73 N.Y.S. 475, 477; Braman v Braman, 236 App. Div. 164, 168, 258 N.Y.S. 181, 186; Squier v Houghton, 131 Misc. 129, 226 N.Y.S. 162.

"[2] The defendants argue that the trust situs is in Rhode Island and, therefore, that the courts of that state have exclusive jurisdiction of this action. Ascertainment of the situs of the trust will not determine the jurisdictional question here presented for it is clear that the forum of the situs of the trust does not have exclusive jurisdiction of actions and proceedings affecting or relating to the trust. Helme v Buckelew, 229 N.Y. 363, 128 N.E. 216; Leighton v Roper, supra; Erdheim v Mabee, 305 N.Y. 307, 113 N.E. 2d 433; Farmers Loan & Trust Co. v Ferris, supra; Braman v Braman, supra. The trust situs may serve to identify the law governing the substantive questions arising from the administration of the trusts. However, at this time, it is unnecessary to decide what law governs the trusts here involved. If foreign law governs the substantive issues this court will not hesitate to ascertain and apply it. Cross v United States Trust Co., 131 N.Y. 330, 348, 30 N.E. 125, 130, 15 L.R.A. 606.

". . .

"[4] The fact that the trust res consisted in part of real property situated in Rhode Island is of no significance on the issue of jurisdiction. It may require the application of Rhode Island law in respect of the proceeds of the real property in the hands of the plaintiffs, but does not serve to deprive this court of jurisdiction of this action under the facts of this case.

". . .

"[10] This action was instituted during April, 1953. The defendants, Barbara Norman Cook, individually, and Cornelius C. Moore, as executor of the Estate of Bradford Norman, deceased, appeared generally in this action on June 17, 1953. The defendant Moore by his answer seeks affirmative relief. All of the defendants herein have been served. This cause is presently on the ready waiting special term calendar. On February 10, 1954, the defendants, Barbara Norman Cook, individually, and Cornelius C. Moore, as executor of the Estate of Bradford Norman, deceased, instituted an action in the Superior Court of Rhode Island. The parties in the last described action are the same and the relief sought is substantially the same as in this action. The plaintiffs move to enjoin the defendants, Cook and Moore, the plaintiffs in the Rhode Island action, from proceeding with the latter action. Under the circumstances of this case, this court, having first obtained jurisdiction of the parties and the trust res, should enjoin prosecution of the Rhode Island action. Civil Practice Act, §878; Barry v Mutual Life Insurance Company, 49 How. Pr. 504, affirmed 8 Hun 395, affirmed 71 N.Y. 261; Locomobile Co. v American Bridge Co., 80 App. Div. 44, 80 N.Y.S. 288; Gaunt v Nemours Trading Corp., 194 App. Div. 668, 186 N.Y.S. 92; Merritt-Chapman & Scott Corp. v Mutual Benefit Life Insurance Co., 237 App. Div. 70, 260 N.Y.S. 374; Estate of Vischer, Sur., 131 N.Y.S. 2d 475, affirmed 278 App. Div. 565, 102 N.Y.S. 2d 449; Wehrhane v Peyton, 134 Conn. 486, 58 A.2d 698, 6 A.L.R. 2d 896."

Another California case, In re Knox Estate, 126 P.2d 108, was an appeal by the beneficiary of a testamentary trust from an order of the Superior Court of California allowing and approving the accounts of the testamentary trustee.

Wesley L. Knox, the father of appellant, died a resident of the State of Illinois, where his will was admitted to probate. Decedent left certain property in California and ancillary proceedings were accordingly commenced there. By the will and the codicil thereto, the remainder of decedent's estate was bequeathed in trust to a son of the deceased, Charles Edmund Knox, of Tupper Lake, N.Y., and to Arthur B. Wells, of Chicago, Ill., and the survivor of them. At the time of the instant action, Charles Edmund Knox, residing in the State of New York, was acting as surviving trustee. Appellant was a resident of the State of California, and in her petition for an accounting, prayed that the surviving trustee appear and render a full and true account of all of the trust funds held by him for the benefit of appellant (petitioner). According to the parties, the proceedings herein were taken under section 1120, et seq., of the Probate Code of California. At the time of the hearing, the surviving trustee was ill at his residence in New York and the hearing proceeded with the understanding that if it became necessary, the beneficiary (appellant-petitioner) and attorneys for the trustee should have the right to a continuance and the privilege of taking the deposition of the trustee, in case he sufficiently recovered to give his deposition. The accounts presented by the trustee for settlement in that proceeding included all the property in his hands, whether received through administration in California or in Illinois; and these accounts were allowed and approved.

"Appellant contends that the court did not have jurisdiction to settle the accounts of the trustee except as to the California property; that the court erred in allowing the account without requiring the trustee to appear in person as a witness or permitting his deposition to be taken; that the court committed re-

versible error in settling the accounts with respect to items of rent of certain real property in California; that the judgment should be reversed because of allowance of attorney's fees and fees to the trustee; and that the evidence is insufficient to support the settlement of the accounts.

"Respondent concedes that appellant's contention as to jurisdiction would be true except for sections 1120 and 1129 of the Probate Code, the effect of which sections, respondent contends, is to confer upon the probate court a portion of the equity powers vested in the superior court."

The court then went on to say, at page 111:

"There is no question but that the probate court is by section 1120, supra, given jurisdiction over the accounts of a testamentary trustee of a trust created by a will probated in this state. The question here presented is whether such jurisdiction should be exercised over the entire accounts of a testamentary trustee, residing in another state, where the will creating the trust was probated in a third state, a portion of the property involved lies in the State of California and the beneficiary is a resident of this state. It is apparent that, granting the scope of jurisdiction given by section 1120, the question involved remains unanswered until the conflict is resolved between the jurisdiction of the probate court of this state and that of the court where the will was originally probated and the trust therefore created. The question is whether an accounting by a testamentary trustee for the entire estate will lie in the court which had jurisdiction over ancillary administration of a portion of the estate.

" [3-5] An action will not lie in this state to compel an accounting by an executor appointed by a sister state, though ancillary administration is had here.

In such a case the California court has jurisdiction only over the ancillary executor. Philbrook v Randall, 195 Cal. 95, 102, 103, 231 P. 739. However, a testamentary trustee occupies a different position. A general administrator is legally a person separate and apart from an ancillary administrator; but a testamentary trustee is both legally and in fact the same person in any state. This distinction is based upon the respective powers of a trustee and an executor. 'Though both take their authority from the will, and both are accountable primarily for the execution of their trust to the courts where the will has been probated, yet the trustee has in the execution of his trust different powers and different duties from the executor, and a foreign court can more properly assume jurisdiction in an action brought by or against a trustee than in an action brought by or against an executor, and he can more properly be regarded as an individual rather than an officer of the court.' Everhart v Provident Life & Trust Co. of Philadelphia et al., 118 Misc. 852, 195, N.Y.S. 388, 390."

The court, after distinguishing the case of Schuster v. Superior Court, 98 Cal. App. 619, went on to say, at page 113:

"[6] In the matter of compelling a testamentary trustee to account for his trust, the doctrine of forum conveniens, namely, the place where the trustee may be reached by process, is frequently applied. Such a doctrine appears to have been applied in Ewing v Ewing, L.R. 10 App. Cases 453 (House of Lords), a leading English case involving trust funds partly in England and partly in Scotland. It was there held that the Scotch and English courts had concurrent jurisdiction over the accounting of trust funds. 'The courts of the state in which the trustee may be reached by process will, in the absence of factors necessitating

the application of the doctrine of forum nonconveniens, assume jurisdiction of an action by the beneficiary of a trust under the will of a resident of another state, to recover the trust property or to compel the execution of the trust or for an accounting.' (Note, 115 A.L.R. 802, 815, and cases cited.)"

Insofar as we are concerned, and following the guidelines in re Knox Estate, supra, the distinction as pointed out between a testamentary trustee and an administrator is particularly pertinent. As was pointed out in the matter of compelling a testamentary trustee to account for his trust, the doctine of forum conveniens, namely the place where the trustee can be reached, is frequently applied. As was pointed out by Justice Doran, of the District Court of Appeals of California, the doctrine was also applied in England as is evidenced by the Ewing case cited by the California court.

Moody v. Branson, 136 P.2d 925, in an Oklahoma case which falls almost squarely in point with the instant case presently before this court. In its own syllabus, the court stated:

"1. An action against a testamentary trustee to require him to account, for his removal, and for the appointment of a successor trustee, is transitory in nature, and a court of general jurisdiction of the county where the trustee resides and where a part of the trust property is located has jurisdiction of the action."

In that case, decedent died testate in Oklahoma in 1931. His will provided for the creation of a trust, naming his adopted daughter as direct beneficiary and his sister as trustee. The will was admitted to probate and the estate fully administered in Garfield County, Oklahoma. In 1937 the beneficiary brought an action against the trustee in the District Court of

Greenwood County, Kansas, the place of the trustee's residence, to require an accounting by her as trustee and for her removal if she was found to have mismanaged the estate. The Kansas court found Mrs. Moody guilty of mismanagement of the trust, removed her as trustee and ordered her to deliver the assets of the trust, including the land in Oklahoma, to the newly appointed successor trustee. The Kansas court, by its judgment, specifically retained jurisdiction to administer, required the successor trustee to post bond and ordered him to make annual reports. No appeal was taken.

In the above action, the original trustee and Parmella Raymond, a sister, a contingent beneficiary, alleged the judgment of the Kansas Court was void because of lack of jurisdiction; that the original trustee was still trustee; and in the alternative, prayed that if the Kansas judgment be held valid, that the successor trustee, as such, be removed by the Oklahoma court for cause.

The successor trustee and the beneficiary alleged the judgment of the Kansas court was valid; that the successor trustee was entitled to the trust res, and that the Oklahoma court had no jurisdiction to remove the successor trustee because the Kansas court had specifically retained jurisdiction. The trial court rendered judgment denying the removal of the successor trustee and the appeal followed contending that in an action to remove a trustee and appoint a successor, all cestuis que trustent are indispensable parties and as Parmella Raymond was not a party to the proceeding in Kansas, the judgment of the court was void. The court of Oklahoma did not agree, and went on to say, at page 927:

"[1] This was an action in personam against Martha Ryan Moody. She resided in Greenwood

County, Kansas. The personal property of the Trust was located there. The district court of that county being one of general jurisdiction possessing general equity powers, had jurisdiction of the action. Manley v Carter, 7 Kan. App. 86, 52 P. 915; 65 C.J. 597, 629; Bogert, Trusts and Trustees, vol. 3, §523, p. 1656."

The court, after further discussing the issues involved, went on to say, at page 928:

"2. Appellants next contend that even though Branson's appointment by the Kansas Court be held valid the trial court had power to remove him for cause, and erred in refusing to hear evidence on that issue. The basis of the contention is that since much of the property of the trust is located in Oklahoma and the parties were before the court, the court had power to inquire into the trustee's conduct since his appointment and into the question of whether he was a proper person to act by reason of his residence in Kansas. The pleading and offer of proof on this issue went chiefly to the proposition that Branson, who lived in Kansas, should be removed because the trust estate could be more economically administered by an Oklahoma trustee. Assuming, without deciding, that such issue may be raised in a collateral proceeding such as this; that cestuis que trustent whose interests are merely contingent may raise the question; that the Kansas court had no authority to retain jurisdiction to administer the details of the trust; and that the pleadings state a valid cause for removal, we think the trial court, nevertheless, properly refused to entertain the question.

"The District Court of Greenwood County, Kansas, by its judgment was at least asserting an exclusive and continuing jurisdiction to administer the trust. It had required its trustee to give bond for the faithful performance of his duties. If the courts of Oklahoma,

while the action in Kansas is pending, should order his removal and require him to pay over his funds to a successor trustee named here, he might easily be confronted with conflicting orders. Since the situs of the personal property of the trust is now in Kansas the result might be that there would be one trustee for the assets having a situs in Kansas and another trustee for the property located in Oklahoma. We think that only confusion, inconvenience, and defeat of the settlor's intent could result from Branson's removal by the courts of this state. Nothing could be gained by hearing evidence on that issue. None of the parties to this appeal are residents of Oklahoma, but two of them are residents of Kansas. The courts of Kansas are as competent to administer justice as those of Oklahoma. Any evidence necessitating the removal of the new trustees for cause can as well be presented there as here. Since the Kansas court is the court of first jurisdiction, expediency and the practical desirability of avoiding a multiplicity of forums necessitate the holding that appellants be required to seek their relief there."

See also in re Estate of Taylor, 424 P.2d 186 (1967).

In applying the principles in the above well-reasoned cases and Restatement 2d, Conflict of Laws, plus the principles in those cases cited in our earlier opinion, from which no appeal was taken, (Thatcher Estate, 47 D. & C. 2d 712), we must again conclude that we have jurisdiction to hear and decide the matter raised by petitioner. Again, we have an action in personam against a trustee residing in Allegheny County, Pa. The moveable trust res is also located here. Our court having general equity powers has jurisdiction to hear the matter. As was pointed out in Restatement 2d, Conflict of Laws:

"Thus, if a court acquires jurisdiction over the

trustee it may entertain a suit to compel him to redress a breach of trust, even though the trustee has qualified as trustee in a court of another state or the administration of the trust is in another state."

We feel that statement is particularly pertinent insofar as the instant matter is concerned. In addition, as was pointed out by the Oklahoma court in Moody v. Branson, supra, the courts of Kansas (Pennsylvania) are as competent to administer justice as those of Oklahoma (New Mexico). Any evidence necessitating the removal of the trustee (or requiring an accounting for the correction of any alleged mismanagement) can be just as well presented and decided here as there.

The preliminary objections are overruled. An order will be prepared in accordance with this opinion.

### ORDER

And now, October 29, 1971, the preliminary objections of respondents are overruled and respondent is granted 30 days from the date hereof to file an answer to petitioner's petition.